**No. 79SA256**

**Margaret Ruff, Betty J. Baker, Mary A. Beer, Cheryl J. Crum, Beverly Ditolla, Esther L. Harris, Camilla L. Gallegos, Kathleen M. McDowell, Christine L. Miller, Rose Mary Sedlmayer, Rose Marie Serna, Mark E. Shugarts v. John Kezer, Director, Division of Labor, Department of Labor and Employment, Industrial Commission of Colorado, Communication Workers of America, a labor organization, the Mountain States Telephone & Telegraph Company, a corporation**

(606 P.2d 441)

Decided February 4, 1980.                    Rehearing denied February 25, 1980.

---

Burnett, Horan & Hilgers, Mike Hilgers, Don D. Jacobson, for plaintiffs-appellants.

Hugh L. Reilly, Of Counsel National Right to Work Legal Defense Foundation, Inc.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Joel W. Cantrick, Assistant Attorney General, for defendant-appellee, John Kezer.

David R. Hansen, for defendant-appellee, The Mountain States Telephone and Telegraph Company.

McKendree & Lubin, John W. McKendree, Clay R. Smith, for defendant-appellee, Communication Workers of America.

Charles V. Koons, Of Counsel, Kane and Koons.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

Plaintiffs-Appellants seek review of a district court summary judgment order denying their request for injunctive relief to prevent the defendants John Kezer, Director of the Colorado Division of Labor, Mountain States Telephone and Telegraph Company (Mountain Bell), and Communication Workers of America (CWA), an unincorporated labor association, from implementing an "all-union agreement"[1] between defendants Mountain Bell and CWA. Because we find that the Colorado Labor Peace Act supplies no basis for the relief requested, we affirm.

## I.   FACTS

Plaintiffs are employed by Mountain Bell under terms governed by collective bargaining agreements between Mountain Bell and CWA. They sought an all-union referendum as provided by 1977 amendments to the Colorado Labor Peace Act, section 8-3-108(1)(c)(II)(D), C.R.S. 1973 (1978 Supp.).[2]

---

[1] Section 8-3-104(1), C.R.S. 1973 (1978 Supp.):
"'All-union agreement' means a contractual provision between an employer or group of employers and a collective bargaining unit representing some or all of the employees of the employer or group of employers providing for any type of union security and compelling an employee's financial support or allegiance to a labor organization. 'All-union agreement' includes, but is not limited to, contractual provision for a union shop, a modified union shop, an agency shop (meaning a contractual provision which provides for periodic payment of a sum in lieu of union dues but does not require union membership), a modified agency shop, a prehire agreement, maintenance of dues, or maintenance of membership."
Under §14(b) of the Labor Management Relations Act (the Taft-Hartley Act), 29 U.S.C. §164(b), states may adopt laws prohibiting or regulating the enforceability of union security clauses. The provision in the Colorado Labor Peace Act regulating "all-union" security agreements is one of the few areas of labor management relations not pre-empted by the Labor Management Relations Act of 1947. *Communications Workers v. Western Electric Company,* 191 Colo. 128, 551 P.2d 1065, *appeal dismissed,* 429 U.S. 1067, 97 S.Ct. 799, 50 L.Ed.2d 785 (1977).
[2] Section 8-3-108(1)(c)(II)(D):
"Within forty-five days after the certification by the director . . . twenty percent of the employees covered by such [all-union] agreement may file a petition, upon forms provided by the division, demanding an election submitting the question of ratification of such agreement to the employees covered by such agreement . . . ."

The 1977 amendments were adopted by the General Assembly in response to this Court's ruling in *Communication Workers v. Western Electric Company,* 191 Colo. 128, 551 P.2d 1065, *appeal dismissed,* 429 U.S. 1067, 97 S.Ct. 799, 50 L.Ed.2d 785 (1977). They allow employers and labor organizations to mutually ratify existing contractual union security provisions as a substitute for the election required by *Western Electric* before an all-union agreement may be enforced in Colorado. Once the parties ratify an all-union agreement, they file an instrument of ratification with the Director of the Division of Labor. Section 8-3-108(1)(c)(II)(B), C.R.S. 1973 (1978 Supp.). The Director of the Division of Labor then certifies "that such agreement complies with the provisions of section 8-3-104(1), and the provision is enforceable subject to the provisions of section 8-3-108(1)(c)(II)(D)" giving affected employees forty-five days from the issuance of the Director's certification to file a petition, supported by twenty percent of their co-workers, demanding a ratification election.

On July 29, 1977, Mountain Bell and CWA ratified the union security provision, a modified agency shop clause, in their 1974 collective bargaining agreement. Also on July 29, 1977, Juereta Smith,[3] Director of the Colorado Division of Labor, certified the ratification. That gave plaintiffs who sought an election until September 12, 1977, to obtain signatures of twenty percent of the employees in the bargaining unit covered by the ratified agreement. Mountain Bell had 8,680 employees subject to the challenged union security provision. The 8,680 employees worked at 1,765 locations and received their paychecks at 135 locations.

During the petitioning period, both Mountain Bell and CWA refused a request from plaintiffs to use CWA bulletin boards on Mountain Bell premises to post materials advocating an all-union referendum. Requests for a list of Mountain Bell employees and their home addresses were also denied.[4] The bases of the denials were the collective bargaining agreement and the union's status as an exclusive bargaining agent under federal law.[5] The collective bargaining agreement provided bulletin board space for posting union notices. A list of Mountain Bell employees and information about them, including home addresses, is provided to CWA as exclusive bargaining representative under terms of an express agreement spell-

---

[3] John Kezer, the present Director of the Division of Labor, has been substituted as a defendant.

[4] After the 45 days allotted for obtaining signatures had expired, plaintiffs asked Mountain Bell to do, at plaintiffs' expense, a mailing for them to all Mountain Bell employees in the collective bargaining unit. This relief was not requested during the petitioning period. We cannot consider its reasonableness now.

[5] National Labor Relations Act (NLRA), 29 U.S.C. §159(a). See also section 8-3-108(1)(f), C.R.S. 1973.

ing out bilateral duties and obligations concerning the list.[6]

The collective bargaining agreement also provided that CWA representatives could solicit members and carry on union activity on Mountain Bell premises if all activity was outside working periods in space where no Mountain Bell operations or administrative work was performed.[7] This privilege was accorded to petitioners so long as they complied with the non-work place and time limitations.

Plaintiffs allege harassment during solicitation for petition signatures on or near Mountain Bell premises. The three specific incidents of harassment described in the Complaint were admitted by defendants Mountain Bell and CWA for purposes of summary judgment. All three incidents occurred within a few days from July 29, 1977, the date the effort to obtain signatures began, and involved actions by Mountain Bell employees who were union members. The first was on August 9, at a meeting called by plaintiffs during lunch hour in a public park near one of Mountain Bell's facilities. At the gathering, a CWA steward poured a soft drink on a petition while another employee was signing. The petition was not damaged and was submitted to the Division of Labor. The next day, another CWA steward obtained a petition which disappeared and was never recovered. The final incident occurred on August 16, when a union member tore into pieces several petitions in a company cafeteria. The petitions were taped together and turned into the Division of Labor on September 19th by CWA. An unfair labor practice complaint was filed pursuant to the Colorado Labor Peace Act against the employee who tore the petition.

None of the union members who instigated these incidents have been disciplined by either CWA or Mountain Bell. Plaintiffs allege that Mountain Bell's failure to discipline employees violated the Colorado Labor

---

[6] Under the federal scheme, this information can only be required of an employer after the union has demonstrated support among the employees. A list of employee names and addresses is provided to the Regional Director of the National Labor Relations Board (NLRB) once the union has the support of at least thirty percent of the employees in the bargaining unit. [*NLRB Statements of Procedures - Series 8*, 29 C.F.R. §101.8 (1979).] The list is provided *only after* an election is ordered, *Excelsior Underwear, Inc.*, 156 NLRB 126 (1966), *enforced, NLRB v. Wyman Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). Here, the plaintiffs did not obtain support from even twenty percent of the employees in the bargaining unit and an election was not ordered. Thus they had no right to the list under federal law. Once a union becomes the bargaining agent for the employees it does not have an automatic right to a mailing list. Upon a showing of need, the union will generally be permitted to obtain a mailing list for purposes of negotiating and administering the collective bargaining agreement. But the information may not necessarily be given directly to the union if there is a realistic probability of harassment or other abuse. *Prudential Insurance Co. of America v. NLRB*, 412 F.2d 77 (2nd Cir.), *cert. denied*, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969); *Shell Oil Co. v. NLRB*, 457 F.2d 615 (9th Cir. 1972).

[7] Federal law does not require that employees be allowed to solicit union support or oppose union activity during working time in working areas. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *NLRB v. Babcock & Wilcox*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956).

Peace Act[8] and Mountain Bell's announced policy of neutrality toward the referendum effort.[9]

Plaintiffs also challenge circulation by CWA of forms to withdraw signatures from petitions. The Division of Labor withdrew the petition signatures of 18 employees when the forms were filed. Plaintiffs argue that the Division of Labor had no statutory authority to recognize the withdrawal of signatures; defendants respond that signature withdrawal is not prohibited by the Colorado Labor Peace Act. We do not reach the issue because the number of signatures involved is not sufficient to affect the denial of the election.

The signatures on the petitions filed on September 12, 1977 fell short of the necessary number, 1,736 signatures, to obtain an election. The Division of Labor found that 1,324 valid signatures were received by September 12.[10] After the Division of Labor determined the validity of the remaining signatures, Mountain Bell and CWA were notified that an insufficient number of signatures had been filed to obtain a referendum, and on November 2, 1977, CWA asked Mountain Bell to enforce the all-union agreement. An agreement between Mountain Bell and CWA, approved by the Denver District Court on December 22, 1977, provided those employees who so requested an opportunity to pay an amount equivalent to dues into an escrow account pending the outcome of this case.

On September 12, 1977, the final day for petitioning, plaintiffs filed suit in Denver District Court requesting injunctive relief primarily from the Division of Labor. They alleged that the Division of Labor had failed to establish uniform requirements to ensure the sufficiency of petitions and to promulgate and enforce regulations protecting plaintiffs' exercise of their petitioning rights under the Labor Peace Act, including access to employee lists and bulletin boards. They sought an order directing the Division of Labor to adopt and enforce regulations to meet their requests.

The relief sought against CWA was an order requiring CWA to cease and desist from harassing petitioners and to refrain from enforcing the all-union agreement. The relief requested from Mountain Bell was the provision of employee lists and bulletin boards and a prohibition on enforcement of the all-union agreement.

CWA removed the case to Federal District Court, under 28 U.S.C. §1441. The federal court remanded the case to state court, concluding that no substantial federal question was presented in the complaint, that the

---

[8] Section 8-3-108(1)(c)(I), C.R.S. 1973 (1978 Supp.).

[9] Mountain Bell contends that its right to free speech, protected in section 8-3-109, C.R.S. 1973, allows an employer to comment on the issues involved in union election activities. Because Mountain Bell could have supported its ratified agreement and opposed the effort to seek a ratification election, Mountain Bell argues that its policy of neutrality was well within legal limits.

[10] 1,594 valid signatures were received by the Division if the date of reception is disregarded.

claims were based on a Colorado Statute within the power of the state to enact under section 14(b) of the Taft-Hartley Amendments.[11]

The parties then engaged in extensive discovery. Trial was set for October 16 through 18, 1978, and pre-trial statements were submitted on August 17, 1978.

Defendants Mountain Bell and CWA filed motions for summary judgment, which the court granted on September 28, 1977, the day that plaintiffs' opposition to the motion for summary judgment was filed. The court made no findings of fact or conclusions of law on September 28, but on November 2, 1978, buttressed its ruling with findings and conclusions supplied by the defendants CWA and Mountain Bell. The plaintiffs did not challenge the proposed findings and conclusions filed with the court. Summary judgment was granted for the Division of Labor on October 16, 1978.

## II. PROPRIETY OF SUMMARY JUDGMENT — PROCEDURAL

Plaintiffs contest the entry of summary judgment prior to the completion of discovery and the failure of the trial judge to make findings of fact and conclusions of law at the time he entered summary judgment. The facts upon which summary judgment was based were uncontroverted. At the time, the plaintiffs did not contest or seek to amplify the facts set out in the summary judgment motions, as required by C.R.C.P. 56. The motions were granted two weeks before trial, after remaining pre-trial statements had been submitted and with only minor discovery remaining. Plaintiffs have given no indication to either the trial court or to us what information or additional facts they anticipate would be developed through the remaining bits of discovery which would affect the summary judgment ruling.

Summary judgment orders should be supported by findings of fact and conclusions of law, and will be upheld when supported by the record. *General Motors v. Colorado,* 181 Colo. 360, 509 P.2d 1260 (1973). Moreover, plaintiffs did not object to the proposed findings and conclusions. For this reason, and because they did not amplify under Rule 56 the facts upon which defendants based their motions for summary judgment, they did not preserve these bases for their claims on appeal.[12]

Therefore, we uphold the entry of summary judgment.

## III. PROPRIETY OF SUMMARY JUDGMENT — SUBSTANTIVE

A. *Claims Against the Division of Labor*

---

[11] Order of Judge Matsch, Civil Action No. 77-2-916, December 8, 1977.

[12] Many of the facts set forth in the appellants' brief were not before the trial court, and we do not consider them in determining the propriety of summary judgment. *Laessig v. May D & F,* 157 Colo. 260, 402 P.2d 183 (1965).

█ The Director of the Division of Labor accepted the ratification of the union security clause in the agreement between Mountain Bell and CWA and notified Mountain Bell that the agreement complied with section 8-3-104(1), C.R.S. 1973, and that the 45-day petitioning period had commenced for those employees who wished to seek a referendum. The duties of the Director to assist in the conduct of a petition drive for a referendum under the Colorado Labor Peace Act are set out in section 8-3-108(1)(c)(IV) and (V), C.R.S. 1973 (1978 Supp.).[13] The Director provided the forms for the petitions,[14] accepted the petitions, verified signatures, and notified the affected parties that an insufficient number of signatures had been filed. The statute does not require the Director to do more.

Plaintiffs suggested a number of rules which they maintain the Director should have adopted to protect their right to petition, but they do not point to any provisions in the statute which require the particular regulations they request. Moreover, the Director of the Division does not have the authority to adopt rules. The authority to promulgate regulations under the Labor Peace Act is with the Colorado Industrial Commission. See section 8-3-105(2), C.R.S. 1973.[15] The Industrial Commission adopted several sets of rules after this action was filed to implement the 1977 all-union agreement amendments to the Colorado Labor Peace Act.[16] None of the rules adopted address the concerns of the plaintiffs.

We conclude that the Colorado Labor Peace Act does not provide a basis for the relief requested against the defendant Director of the Division of Labor. It is not for this Court to fashion duties from whole cloth, *Colorado Public Interest Research Group, Inc. v. Hills,* 420 F. Supp. 582 (D. Colo. 1976); *see also Brown v. Barnes,* 28 Colo. App. 593, 476 P.2d 295 (1970), or imply provisions of a statute which might remedy the wrongs alleged here. *Christner v. Poudre Valley Cooperative Assn.,* 235 F.2d 946 (10th Cir. 1956); *see also Civil Service Employees v. Love,* 167 Colo. 436, 448 P.2d 624 (1968).

B. *Claims Against Mountain Bell*

---

[13] Those duties include providing:
—a means for submission of confidential petitions for a referendum;
—a means of verification of employment, status and eligibility of petitioners;
—a means of determining the sufficiency of the petitions.
There is to be no disclosure of the identity of the petitioners except under a subpoena or court order.

[14] Section 8-3-108(1)(c)(II)(A) and (D), C.R.S. 1973 (1978 Supp.).

[15] At the time summary judgment was entered, plaintiffs had filed a motion to substitute as a defendant the Colorado Industrial Commission for the Director of the Division of Labor. The Division of Labor moved to strike the plaintiffs' motion. The trial court did not rule on either motion.

[16] 7 CCR 1101-1 (Labor Peace Act Rules, temporary rules, October, 1977, and permanent rules, June 30, 1978).

■ Plaintiffs claim that Mountain Bell's denial of access to bulletin boards, a list of employees, and the premises for solicitation purposes discriminated against them, violating the Colorado Labor Peace Act. The record discloses that access to the premises for election-related activity was the same for both plaintiffs and union members. The defendants Mountain Bell and CWA admit that plaintiffs were denied access to bulletin boards and to the Mountain Bell employee list.

Plaintiffs urge that under the Labor Peace Act, section 8-3-108(1)(c)(I), C.R.S. 1973 (1978 Supp.), it is an unfair labor practice to "encourage or discourage membership in any labor organization . . . by discrimination in regard to hiring, tenure, or other terms or conditions of employment . . . ." However, the exception to this requirement provides: "that an employer shall not be prohibited from entering into an all-union agreement" if the procedural requirements for ratifying the agreement are met. Section 8-3-108(1)(c)(I), C.R.S. 1973 (1978 Supp.). The statute specifies notice to the employees, a period of time for circulating petitions requiring an election, and the number of signatures which must be obtained before an election will be required. The statute does not require any course of action by the employer, let alone such specific conduct as the provision of bulletin board space or access to lists of employees.

Because state law does not require Mountain Bell to provide bulletin board space or lists of employees in the context of petitioning for an all-union referendum, the company is bound by its collective bargaining agreement and federal law on the exclusive bargaining agent relationship.[17]

This brings us to the crux of plaintiffs' claims. They argue that unfair labor practices in the context of the Colorado Labor Peace Act provisions on all-union agreements are governed by state law rather than by federal law, and they urge us to find that defendants' actions violated state law. We decline to do so.

If the statute set forth unfair labor practices in the context of all-union agreement issues, we would be bound by state law. We can look in the referendum context, to all-union agreement provisions in the state statute. Section 8-3-108(1)(c)(I), (II), (III), (IV), and (V), C.R.S. 1973 (1978 Supp.). Since the all-union agreement provisions do not specify any requirements for an employer's dealings with either the union or referendum petitioners, let alone require access to bulletin boards and lists of

---

[17] NLRA, 29 U.S.C. §159(a) and section 8-3-107(1), C.R.S. 1973. It is an unfair labor practice under the NLRA to bargain with individual employees on "mandatory" subjects of collective bargaining. *NLRB v. Jones and Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), *Medo Photo Supply v. NLRB,* 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944), *NLRB v. Proof Co.*, 242 F.2d 560 (7th Cir. 1957), *cert. denied,* 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957). The collective bargaining agreement specifically allocated bulletin boards to CWA. Bulletin board space is a "mandatory" subject for bargaining. *NLRB v. Proof Co., supra.* With regard to mailing lists, see footnote 6, *supra.*

employees, we cannot find that the failure of Mountain Bell to provide bulletin boards or access to lists of employees was a state unfair labor practice.

▪ The only statutory bases for unfair labor practice claims during the petitioning period are the general unfair labor practice provisions in the Labor Peace Act, section 8-3-108(1), C.R.S. 1973 (1978 Supp.). When we look to the general unfair labor practice provisions, we tread on federal ground. Federal law pre-empts state unfair labor practice provisions from governing claims which significantly threaten uniformity in federal labor administration. *U. S. Const.*, Art. VI, §2; *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Access to bulletin boards and lists of employees is subject to federal determination; therefore, we are prevented from finding that withholding access was an unfair labor practice under the general sections of the Labor Peace Act, section 8-3-108(1), C.R.S. 1973 (1978 Supp.).

## C. *Claims Against CWA*

The plaintiffs allege that individual union members' harassment[18] of them was an unfair labor practice as defined in section 8-3-108(2)(a), C.R.S. 1973.[19]

▪ The remedy for the commission of state unfair labor practices is to file a complaint under section 8-3-110, C.R.S. 1973. This was done in the incident where an employee union member tore into pieces several petitions.[20] It is not a requirement that administrative remedies in the Division of Labor be exhausted before an unfair labor practice may be raised as such in court proceeding.[21] Nor is it a bar to judicial relief that the ad-

---

[18] The claim of harassment was primarily against union members, but it was also against Mountain Bell for not firing or otherwise disciplining union members engaged in harassing activities. Section 8-3-108(1)(a) and section 8-3-106, C.R.S. 1973. Mountain Bell maintains that its position of neutrality would be violated if it disciplined either the employees who were union members or plaintiffs who may have violated Mountain Bell's rules for soliciting petition signatures.

[19] Section 8-3-108(2)(a) provides that it is "an unfair labor practice for an employee, individually or in concert with others to: (a) coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in section 8-3-106 . . . ."

Section 8-3-106 provides that ". . . employees have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own free choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection. Each employee also has the right to refrain from any of such activities . . . ."

[20] *Crum v. Hollis,* Division of Labor, Case No. 14411 (March 31, 1978).

[21] Section 8-3-110(1), C.R.S. 1973.

ministrative agency has considered an incident of harassment.[22] Therefore, the uncontroverted incidents of harassment alleged against CWA were properly before the trial court.

■ The next question is may we look to state law for the definition of an unfair labor practice in a petitioning period. The answer is "yes",[23] to the extent that the activities complained of are not pre-empted by federal law.

*Western Electric* held that Colorado procedures would be followed to determine a bargaining unit for purposes of an all-union referendum. Relying on *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board,* 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691 (1946), this Court found that there was no federal pre-emption since the states were permitted to regulate as well as prohibit union security provisions under section 14(b) [29 U.S.C. §164(b)]. This case presents an issue not decided in *Western Electric:* whether state regulation of union security agreements extends to unfair labor practice claims cognizable under sections 7 and 8 of the NLRA.

Plaintiffs' harassment claims could be determined by the NLRB under 29 U.S.C. §158(b)(1). Until recently when a claim was one which came within either section 7 or section 8 of the federal act, state jurisdiction was pre-empted [*San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)] with limited exceptions.[24] *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), relaxed this broad restriction on state jurisdiction. Both *Garmon* and *Sears* maintain the principle that sections 7 and 8 embody vital aspects of federal labor policy which generally control state interests.

■ However, the line of cases which begins with *Algoma, supra,* holds that state laws adopted pursuant to section 14(b) [29 U.S.C. §164(b)] represent an area where state laws will control. *See Retail Clerks International Association v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963); *Western Electric, supra.* Although we have found no case which reconciles the need for a uniform administration of sections 7 and 8 with the power granted to the states under section 14(b), we find that the section 14(b) power includes the resolution of disputes such as harassment of plaintiffs while circulating petitions for an

---

[22] Section 8-3-110(1), C.R.S. 1973.
[23] "State power, pursuant to §14(b), begins with the actual negotiation and execution of the type of agreement described by §14(b)." *CWA v. Western Electric, supra,* 551 P.2d at 1078. *See Retail Clerks Local 1625 v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963).
[24] *See Garmon, supra; International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958); *Youngdahl v. Rainfair,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957).

all-union referendum.

*Algoma, supra,* and *Schermerhorn, supra,* indicated that the states have power to enforce and regulate union security provisions enacted pursuant to section 14(b). By dismissing the appeal in *Western Electric,* the United States Supreme Court in effect extended *Algoma* and state power under 14(b) to allow state determination of a bargaining unit. Moreover, the NLRB, in a case arising in Colorado, followed the holding in *Western Electric,* saying that Colorado is free from federal interference to place conditions precedent on enforcement of union security agreements.[25] Thus, for the limited purpose of regulating and enforcing union security agreements, the importance of federal uniformity in the administration of sections 7 and 8 bows to state power under section 14(b).

Nevertheless, even though the harassment claims are within the scope of state relief, the facts before the trial court do not show a chilling effect on the petition drive. The record for purposes of summary judgment shows three relatively isolated incidents during the first ten days of petitioning activity. None were shown to have a wide-spread impact on the willingness of employees to sign the petitions, and the signatures on the affected petitions were received and counted by the Division of Labor.[26]

The limited effect of harassment in this case can be distinguished from that shown in *NLRB v. Hale Mfg. Co.,* 602 F.2d 244 (2d Cir. 1979). There the company challenged a certification election, and the Second Circuit found error in the NLRB denial of a hearing on the effect of an incident of harassment on the outcome of the election. On the day of the election glass was thrown at union opponents following an argument about the merits of the election. The results were close, and there was a showing that other employees heard about the incident and were intimidated by it.

Here, not only was there no physical violence, but the incidents took place early in the petitioning period and were halted promptly. There is no indication in the record that because of the incidents employees were unwilling to sign petitions. Although we do not condone such activities, summary judgment was proper.

## IV. CONCLUSION

The Colorado Labor Peace Act requires that signatures of twenty percent of the employees of a collective bargaining unit be obtained before an all-union agreement must be ratified by a separate election.[27]

---

[25] *Canyon Concrete Company* (Case Nos. 72-CA-5515, *et al.,* October 31, 1977). Advise from Assistant General Counsel to Director, Region 27.

[26] The maximum number of signatures on the petition not retrieved, 25 signatures, did not bring the number of signatures to twenty percent of the employees in the bargaining unit.

[27] The terms of the collective bargaining agreement, including union security provisions, sometimes are ratified by an employee election under the National Labor Relations Act.

Summary judgment was appropriate when the plaintiffs did not have the required number of signatures.[28] Injunctive relief, as requested by the plaintiffs, was not appropriate as to past incidents of harassment which were not shown to be continuing. Nor was relief appropriate which would require access by plaintiffs to bulletin boards and mailing lists which were within the jurisdiction of the National Labor Relations Board. We conclude, therefore, that because insufficient signatures were obtained, the court did not have the authority to enjoin the operation of the all-union agreement clause in the collective bargaining agreement between Mountain Bell and CWA.

Judgment is affirmed.

JUSTICE GROVES and JUSTICE ROVIRA do not participate.

---

[28] Evidence was before the court that there were no more signatures to be gained, despite the practices alleged to be discriminatory by the plaintiffs. Deposition testimony showed that by August 24, in the opinion of at least two plaintiffs, the petitioners had obtained as many signatures as they could get.