**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS/LOCAL UNION 1269, Plaintiff–Appellant,**

v.

**Edwin T. VIKMAN and Duane Vikman, Defendants–Appellees.**

**No. 90CA1198.**

Colorado Court of Appeals,
Div. II.

Aug. 13, 1992.

Rehearing Denied Jan. 7, 1993.

Certiorari Granted July 12, 1993.

Cross-Petition for Certiorari
Denied July 12, 1993.

Hornbein MacDonald Fattor and Hobbs P.C., James C. Fattor, Rita Byrnes Kittle, Denver, for plaintiff-appellant.

Sherman & Howard, James E. Hautzinger, N. Dawn Weber, Denver, for defendants-appellees.

Opinion by Judge JONES.

Plaintiff, International Brotherhood of Electrical Workers, Local Union No. 1269 (union), appeals the directed verdicts entered against it on its claims against defendants, Edwin and Duane Vikman. The union also appeals the court's denial of its motion to dismiss defendants' counterclaims and the court's entry of judgment based on jury verdicts awarding damages for the counterclaims. We reverse the judgments entered and remand with directions.

This case arises from events during a strike called against defendants' employer by the union. The union brought suit against defendants to recover fines levied against them because they had crossed picket lines and worked during the strike. Defendants counterclaimed against the union, asserting violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, et seq. (1988) (LMRDA), breach of contract based upon the union constitution, and outrageous conduct.

The counterclaims set forth the following allegations: Both defendants suffer from severe heart disease which requires constant medical care, and as to Edwin, the disease has necessitated heart surgery. Union officials are aware of the medical condition of both defendants.

When a strike was called in early August 1983, both defendants declined to report to work. However, Edwin Vikman was subsequently informed by company officials that his company medical benefits did not continue during such times when he was out on strike. Therefore, because of his ongoing medical condition, he returned to work.

Allegedly, he was subsequently informed by union officials that his medical benefits did remain in effect even while he was on strike against his employer. He immediately ceased reporting to work and honored the union's picket lines during the remainder of the strike.

Duane Vikman returned to work during the strike during the week of August 22, 1983, because of his perception that his brother's health and safety were jeopardized without his, Duane's, assistance.

The counterclaims allege that, as to both Vikmans, in its conduct toward them during the strike, and in later conducting disciplinary proceedings against them for their having crossed picket lines, the union and its officials acted unfairly, arbitrarily, negligently, capriciously, willfully, and recklessly. In addition, they claim that the union caused persons to damage their property and to convey threats of violence against them.

Defendants' counterclaims under LMRDA were appropriately dismissed. However, the trial court directed a verdict

against the union on its action to enforce the strike fines, determining that, as a matter of law, defendants were not afforded a fair union hearing within the provisions of the union constitution. The union's motions to dismiss defendants' counterclaims for breach of contract and outrageous conduct were denied and those damage claims were submitted to the jury. Defendant Edwin Vikman was awarded $340,000 for compensatory damages and $10,000 for punitive damages. Defendant Duane Vikman was awarded $145,000 for compensatory damages and $10,000 for punitive damages.

## I.

The union contends that the court erred by granting defendants' motions for directed verdicts precluding the union's collection of strike fines. The union urges that the court was mistaken in ruling that, as a matter of law, defendants were not afforded a fair union hearing. The union also contends that the trial court erred by denying its motions to dismiss defendants' counterclaims based on defendants' failure to exhaust internal remedies. Defendants respond that, because resort to union remedies would have been futile, they were not required to exhaust their internal remedies and the trial court properly refused to dismiss their counterclaims.

We agree that directed verdicts against the union on its claims for strike fines were improper. In addition, we determine that the trial court must, as to each defendant, evaluate independently the evidence supporting the union's contention that they failed to exhaust internal remedies and, only then, may the court consider whether each defendant respectively retains standing to bring counterclaims against the union.

The union maintains that defendants did not comply with the LMRDA, wherein exhaustion of available internal union remedies is a prerequisite to recourse in the courts. 29 U.S.C. § 411(a)(4) (1970); *Gesink v. International Ass'n of Machinists & Aerospace Workers*, 831 F.2d 214 (10th Cir.1987). However, in *Winter v. Local Union No. 639*, 569 F.2d 146 (D.C.Cir.

1977), exhaustion of union remedies was held to be futile when union officials are so hostile to a worker that the worker could not hope to get a fair hearing. The *Winter* court observed that failure to exhaust remedies may be excused when a showing of union hostility is made by tendering concrete evidence of union animus, including such instances as when an appeal must be made to union officers with whom a union member has had continuing difficulties or to officers against whom the member's complaint was directed.

## A.

The record indicates that defendant Duane Vikman received notice from the union of his trial for strike violations, that he received notice of the imposition of a fine, and that he was informed of procedures for appealing the fine. Further, there is evidence that he did not follow the prescribed procedures for contesting his fine at a union trial nor for appeal of the fine. Furthermore, there is no evidence in the record that would demonstrate hostility exhibited toward him on the part of the union official to whom he was directed to address his appeal.

Thus, there is no evidence to support a finding that it would have been futile for this defendant to exhaust his internal remedies. We, therefore, reverse the trial court's directed verdict precluding the collection of strike fines as to defendant Duane Vikman and remand for a new trial.

Furthermore, because Duane Vikman did not first contest the union proceedings on appeal, he may have no standing to contest the fairness of the union's trial proceedings that resulted in the union fines. 29 U.S.C. § 411(a)(4) (1970). Thus, upon remand, the trial court is instructed to determine whether this defendant has standing to contest the fair trial issues as well as any other issues his counterclaims will embrace.

## B.

The second defendant, Edwin Vikman, bears the burden of proving whether he could have exhausted his remedies by

appealing the strike fine. The evidence is conflicting as to whether he received proper notice of the union's imposition of a strike fine before he was informed of the action for collection of the fine in state court. Therefore, reasonable persons could differ as to whether this defendant duly exhausted available internal remedies. Thus, the trial court improperly directed a verdict precluding the union's collection of strike fines as to him.

Because there is a question as to whether defendant Edwin Vikman could have appealed the strike fine, he is not now jurisdictionally barred from contesting the imposition of the strike fine in state court. Nor is he precluded from raising a breach of contract counterclaim in which he alleges that the union breached its constitution by ignoring its own requirements that it provide accused strike violators with proper notice of the charges against them and a fair trial.

We reverse the trial court's directed verdict precluding the union's collection of strike fines as to defendant Edwin Vikman. However, we find no error in the trial court's refusal to direct a verdict dismissing such defendant's breach of contract counterclaim.

Upon remand, the court is instructed to resolve whether this defendant retains standing to bring counterclaims by virtue of proper exhaustion of internal union remedies, thus necessitating the trial court's consideration of whether this defendant has received a fair trial. Upon resolution of this issue, the court is instructed to determine whether this defendant's counterclaims will embrace issues other than those relating to a fair trial, as the court may lack jurisdiction to consider this issue.

## II.

We affirm the trial court's refusal to dismiss defendants' counterclaims for outrageous conduct on the grounds that they are preempted by the National Labor Relations Act, 29 U.S.C. § 151, et seq. (1988) (NLRA). We agree with defendants that only a small portion of their counterclaims involves conduct regulated by the NLRA so that their claims are not preempted by federal law, but may properly be litigated in state court.

Citing *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the union relies on the principle that when activities that a state seeks arguably to regulate are protected by the NLRA or constitute an unfair labor practice under the NLRA, state jurisdiction must yield to federal regulation. However, state power to regulate will not be withdrawn when an activity is a "merely peripheral concern of the Labor Management Relations Act" or "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the states of the power to act." *San Diego Building Trades Council v. Garmon, supra.*

The *Garmon* court mandated a balancing of whether, and to what extent, defendants' state claims encompass conduct protected or regulated under the NLRA. That court required a determination of whether the state has a substantial interest in regulating the conduct in question before it may assume jurisdiction over the conduct. In addition, *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) requires a determination of whether the state tort action can be adjudicated without resolution of any underlying claim that might properly have been adjudicated under the federal act.

Under some circumstances, there is the likely possibility that a state tort claim associated with a labor dispute "might form the basis for unfair labor practice charges" under the federal scheme. But, "especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme," exclusive jurisdiction may not lie with the federal government. *Farmer v. United Brotherhood of Carpenters & Joiners, supra.*

*See San Diego Building Trades Council v. Garmon, supra.*

The union argues that defendants' outrageous conduct claims arose as a result of defendants' refusal to participate in strike activity which is protected conduct under the NLRA and that the association of the outrageous conduct claims with the federally protected conduct results in federal preemption of the claims. However, while activity associated with a strike is, indeed, protected conduct under the NLRA, activity that rises to the level of outrageous conduct is *not* protected under the federal scheme, and a state court has a substantial interest in adjudicating the claim without resolving any strike-related claim that might have been brought under the NLRA. Application of this principle is apparent in the *Farmer* court's holding that nothing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute.

We conclude that our state courts may assume jurisdiction for tortious conduct arising out of a labor dispute which may be so outrageous that no reasonable person in a civilized society should be expected to endure it. *See Farmer v. United Brotherhood of Carpenters & Joiners, supra.*

■ Here, evidence showed that defendants had been subjected to conduct not properly associated with strike-related activity, including, for example, that defendants' cars and homes had been damaged, and that violent threats had been made against them. Thus, the elements of a state outrageous conduct claim were present and, therefore, we find no error in the trial court's refusal to dismiss defendants' outrageous conduct counterclaims on the grounds that they were preempted by federal law.

We also, however, direct the trial court to observe the caveat raised by the *Farmer* court: "In view of the potential for interference with the federal scheme of regulation, the trial court should be sensitive to the need to minimize the jury's exposure to evidence of employment discrimination in cases of this sort." *Farmer v. United*

*Brotherhood of Carpenters & Joiners, supra* (fn. 13).

■ Thus, in determining a damage award for outrageous conduct, the jury may not be allowed to consider federally protected union actions related to normal strike activity, such as carrying strike signs, or normal union grievance and fine procedures. We therefore instruct the trial court, upon remand, to issue additional jury instructions to this effect.

Such instructions are necessarily and properly given to the jury based on the court's exhortation in *Farmer v. United Brotherhood of Carpenters & Joiners, supra,* that: "Where evidence of discrimination is necessary to establish the context in which the state claim arose, the trial court should instruct the jury that the fact of employment discrimination (as distinguished from attendant tortious conduct under state law) would not enter into the determination of liability or damages."

### III.

■ Plaintiff also contends that the trial court erred in refusing to instruct the jury that defendants must demonstrate clear proof, under 29 U.S.C. § 106 (1988), that the union authorized or ratified its members acts, as a prerequisite to presenting its counterclaim for outrageous conduct to the jury. We agree.

In *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947), the court held that before a labor organization could be held liable for members' acts, the federal statute requires clear proof that the organization, or members thereof, actually participated, gave prior authorization, or ratified such acts after actual knowledge of their perpetration. We conclude that this standard should apply here because the actions of union members form the basis for this concededly state common law tort action.

We hold that the trial court properly allowed the jury to consider union liability for members' acts under common law agency principles, as this was an issue associat-

ed with the state tort action that comprised the subject matter of the dispute. *See, e.g., Kitchen Fresh, Inc. v. National Labor Relations Board,* 716 F.2d 351 (6th Cir.1983). However, we also find error in the trial court's refusal to instruct the jury that defendants must show clear proof that the union authorized or ratified any unlawful conduct of its members.

The union's further contentions are without merit.

The judgments are reversed, and the cause is remanded for further proceedings and a new trial consistent with the instructions and the views expressed herein.

TURSI and ROTHENBERG, JJ., concur.