CF&I STEEL, L.P., a limited partnership, Plaintiff–Appellee,

v.

UNITED STEEL WORKERS OF AMERICA (USWA); United Steel Workers of America Locals 2102; United Steel Workers of America Locals 3267; Jack Golden, Director—District 12 USWA; David Kins, Sub–District Director Sub–District 6 of District 12 USWA; Ernie Hernandez, President, Local 2102; Joey Padilla, Financial Secretary, Local 2102; Jeanne Landreth, President, Local 3267; Jim Hartford, Vice President, Local 3267; Sam Pierce; Tom Genetta; Richard Martinez; Henry LeFabre, USWA; and John Does and Jane Does, whose names are unknown, individually as officers, agents, and members of the aforesaid Union, Defendants–Appellants.

No. 97CA2045.

Colorado Court of Appeals, Div. IV.

June 10, 1999.

Certiorari Granted Jan. 18, 2000.

LeBoeuf, Lamb, Greene & McRae, L.L.P., Marla S. Petrini, Mary L. Will, Denver, Colorado; Schwabe, Williamson & Wyatt, Thomas M. Triplett, Portland, Oregon, for Plaintiff–Appellee.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Ellen M. Kelman, Dennis E. Valentine, Denver, Colorado; Bredhoff & Kaiser, P.L.L.C., Jeremiah A. Collins, Leon Dayan, Washington, D.C., for Defendants–Appellants.

Opinion by Judge ROTHENBERG.

Defendants, United Steelworkers of America, Local Nos. 2102 and 3287, (the union) and several individual union members appeal the trial court's issuance of a preliminary injunction enjoining them from certain unfair labor practices, including residential picketing, which occurred during a labor dispute with plaintiff, CF&I Steel, L.P. (CF&I). We affirm in part, reverse in part, and remand with directions.

The union authorized its members to strike against CF&I in the course of a labor dispute. Several incidents of improper and coercive conduct were directed at employees who chose to cross the picket line. The improper conduct included threatening phone calls to employees' residences, following vehicles of employees who chose to cross the picket line, interfering with ingress to and egress from CF&I's property for employees

and customers, making verbal threats and harassing non-striking employees, damaging property, and picketing the domiciles of non-striking employees.

CF&I sought and was granted a temporary restraining order and then a preliminary injunction enjoining the union and its members from engaging in violent, intimidating, threatening, and harassing conduct. In so ruling, the trial court clarified that it was "not in any way finding that [the union had] authorized, ratified or condoned" the misconduct of certain union members. But, it found that the public was unable to distinguish between authorized and unauthorized union conduct, and on that basis, it enjoined the union from engaging in the improper behavior.

Further, the trial court enjoined all residential picketing at the homes of company employees, including peaceful residential picketing, as an unfair labor practice under the Colorado Labor Peace Act, § 8–3–101, et seq., C.R.S.1998.

Pursuant to C.A.R. 1(a)(3), the union appealed the order granting the preliminary injunction.

## I.

The union and union members first contend the trial court lacked jurisdiction to enjoin any residential picketing because the issue was preempted by the federal National Labor Relations Act, 29 U.S.C. § 151, et seq. (1998). We disagree.

■ Generally, a trial court's ruling on a motion for a preliminary injunction will be overturned only if it is manifestly unreasonable, arbitrary, or unfair. If the issue being reviewed concerns only legal questions, the ruling is subject to de novo appellate review. *Evans v. Romer*, 854 P.2d 1270 (Colo.1993); *Board of County Commissioners v. Fixed Base Operators, Inc.*, 939 P.2d 464 (Colo.App. 1997).

■ When a state attempts to regulate activities protected by § 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1998), or acts which constitute an unfair labor practice under § 8, 29 U.S.C. § 158 (1998), due regard for the federal enactment requires that state jurisdiction must yield. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ States retain the power to regulate where the activity regulated is merely a peripheral concern of the Labor Relations Act, or where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it cannot be inferred that Congress deprived the states of the power to act. *San Diego Building Trades Council v. Garmon, supra.* See *Allen–Bradley Local No. 1111 v. Wisconsin Employment Relations Board*, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942) (Congress' intent to exclude states from exerting their police power must be clearly manifested).

In *Allen–Bradley Local No. 1111 v. Wisconsin Employment Relations Board, supra*, the Supreme Court clarified that the federal Labor Relations Act was not designed to preclude states from enacting legislation limited to the prohibition or regulation of employee or union activity involving the following: mass picketing; threatening employees with physical injury or property damage; obstructing ingress and egress to a company; obstructing the streets and public roads surrounding a company; and picketing homes of employees.

More recent cases have affirmed the holding in *Allen–Bradley* that states are not precluded from exercising their police power over such traditionally local matters as public safety and order and the use of streets and highways. *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

■ Because we conclude that the regulation of public safety, including preclusion of

residential picketing, is a matter of local concern, we reject the union's and union members' assertion that the issue of residential picketing has been preempted by the National Labor Relations Act. *See Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (fn.10) ("Appellant does not go so far as to suggest that the National Labor Relations Act preempts the State from enacting a law prohibiting the picketing of residences involved in labor disputes. Such an argument has dubious merit."); *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) (states' powers not preempted in cases of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes). *See also City of Golden v. Ford*, 141 Colo. 472, 348 P.2d 951 (1960) (states retain certain power to regulate picketing and to protect public safety); *United Mine Workers v. Golden Cycle Corp.*, 134 Colo. 140, 300 P.2d 799 (1956) (trial court had jurisdiction to enjoin mass picketing, threats of bodily injury and property damage, obstruction of ingress to and egress from plaintiff's property, and the picketing of employees' homes, together with coercion, harassment, and threats to employees); *K–T Marine, Inc. v. Dockbuilders Local Union 1456*, 251 N.J.Super. 107, 597 A.2d 540 (N.J.Super.Ct.App.Div.1991) (power to enjoin picketing at private residence not preempted by National Labor Relations Act); *State ex rel. Utility Workers Union v. Macelwane*, 116 Ohio App. 183, 187 N.E.2d 901 (1961) (absent United States Supreme Court decision preempting jurisdiction over peaceful picketing of private homes, jurisdiction remains with the states).

## II.

The union and union members also contend the anti-injunction provision, § 8–3–118(1)(e), C.R.S.1998, of the Labor Peace Act denied the trial court jurisdiction to enjoin their peaceful picketing and, for that reason, the injunction should not have been granted. Again, we disagree.

As pertinent here, the anti-injunction provision states that:

*Except as otherwise provided in this article,* no court has jurisdiction to issue in any case involving or growing out of a labor dispute any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person from doing, whether singly or in concert, any of the following acts:

. . . .

(e) [g]iving publicity to and obtaining or communicating information regarding the existence of or the facts involved in any dispute, whether by advertising, speaking, without intimidation or coercion, or by any method not involving fraud, violence, breach of the peace, or threat thereof. . . .

Section 8–3–118(1), C.R.S.1998 (emphasis added).

▮ Initially, we note the § 8–3–118(1)(e) only divests a court of jurisdiction to enjoin conduct that is peaceful, free from intimidation or coercion, and not a breach of the peace. The statute does not affect the court's power to enjoin conduct properly within the purview of the state's police power, which may include residential picketing. *See Allen–Bradley Local No. 1111 v. Wisconsin Employment Relations Board, supra; United Mine Workers v. Golden Cycle Corp., supra.*

Additionally, § 8–3–108, C.R.S.1998, sets forth actions which constitute unfair labor practices under the Colorado Labor Peace Act. Specifically, § 8–3–108(2)(a), C.R.S.1998, makes it an unfair labor practice for an employee to picket the domicile of another employee.

▮ Section 8–3–110(1), C.R.S.1998, provides concurrent jurisdiction to the courts and the Division of Labor for the prevention of unfair labor practices, and a claimant can seek equitable or legal relief in the courts without exhausting administrative remedies. *See Ruff v. Kezer*, 199 Colo. 182, 606 P.2d 441 (1980) (administrative remedies need not be exhausted before an unfair labor practice may be raised as such in court proceeding).

■ We conclude that the language, "[e]xcept as otherwise provided in this article" in § 8–3–118(1), when read together with §§ 8–3–108(2)(a) and 8–3–110(1), conferred jurisdiction upon the trial court to enjoin the union and its members from engaging in an unfair labor practice. Accordingly, to the extent the court was not relying on the state's police power in issuing the injunction, we reject the union's and the union members' contention that § 8–3–118(1)(e) deprived the court of jurisdiction.

## III.

■ Although we have concluded that the trial court did not lack jurisdiction to issue the injunction, we do agree that the injunction against peaceful residential picketing, insofar as it was based on § 8–3–108(2)(a), violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

A state's interest in protecting the well-being, tranquility, and privacy of the home is of the highest order in a free and civilized society. *Carey v. Brown, supra.* Thus, states have the power and the duty to preserve the peace and to protect the privacy, lives, and property of their residents, *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), and retain the power to regulate activity to protect public safety. *See Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, supra; Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, supra; Allen–Bradley Local No. 1111 v. Wisconsin Employment Relations Board, supra; City of Golden v. Ford, supra; United Mine Workers v. Golden Cycle Corp., supra.*

■ Notwithstanding the state's broad police power, picketing involves expressive conduct protected by the First Amendment, *Police Department v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), and restrictions on picketing as a form of expressive conduct are subject to careful scrutiny. *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988).

In *Carey v. Brown, supra*, the Supreme Court struck down, as violative of the free speech clause, an Illinois statute forbidding all picketing on the public streets and sidewalks in residential neighborhoods, but containing an exception for labor protests. The statute did not prohibit "the peaceful picketing of a place of employment involved in a labor dispute or the place of holding a meeting or assembly on premises commonly used to discuss subjects of general public interest." *Carey v. Brown, supra*, 447 U.S. at 457, 100 S.Ct. at 2288, 65 L.Ed.2d at 267. The Court rejected the claim of the statute's proponents that the statute had been narrowly tailored to serve substantial governmental interests that outweighed the statute's impact on constitutionally protected interests.

The Court further concluded that, because the statute selectively excluded picketers from a public forum based on the content of their speech, it violated the equal protection clause of the Fourteenth Amendment.

Based on the holding in *Carey v. Brown, supra*, and other recent pronouncements of the United States Supreme Court, two jurisdictions have invalidated analogous state statutes which treat residential picketing arising from labor disputes differently than other picketing. *See French v. Amalgamated Local Union 376*, 203 Conn. 624, 526 A.2d 861 (1987) (invalidating state statute which banned all residential picketing except labor picketing conducted at residence located at situs of labor dispute); *United Electrical Radio & Machine Workers v. State Employment Relations Board*, 126 Ohio App.3d 345, 710 N.E.2d 358 (1998) (invalidating, as content-based and violative of First Amendment, state statute which made it an unfair labor practice for union to engage in picketing of residence of public official involved in labor relations dispute).

■ We view these two opinions as persuasive and adopt their reasoning. Here, very similar to the circumstances found in *United Electrical Radio & Machine Workers v. State Employment Relations Board, supra*, § 8–3–108(2)(a) specifically makes it an

unfair labor practice for an employee to picket the domicile of another employee. Thus, instead of affording preferential treatment to labor picketing, as occurred in *Carey v. Brown, supra,* and *French v. Amalgamated Local Union, supra,* the Colorado statute impermissibly singles out residential labor picketing for disparate treatment.

■ Accordingly, while there would appear to be no federal constitutional prohibition against a content-neutral statute or ordinance that is narrowly tailored to prohibit focused residential picketing, *see Frisby v. Schultz, supra,* based on the authority set forth above, we conclude that § 8–3–108(2)(a) violates the First Amendment on its face because it is not content-neutral, and is not narrowly tailored to serve a compelling state interest. Additionally, the statute violates the Equal Protection Clause because it provides disparate treatment to residential picketing arising from labor disputes. *See Carey v. Brown, supra; Frisby v. Schultz, supra; Police Department v. Mosley, supra.* *Cf. Hill v. Thomas,* 973 P.2d 1246 (Colo.1999) (upholding limited floating buffer zone around persons entering and exiting health care facilities for purpose of avoiding violence by picketers). *See also* Comment, *Picketers at the Doorstep,* 9 Harv. C.R–C.L. L.Rev. 95 (1974).

## IV.

In view of our conclusion that § 8–3–108(2)(a) cannot withstand constitutional scrutiny, remand is required for further proceedings and clarification of the trial court's order.

As noted earlier, a state may deny otherwise lawful picketing under its power to prevent future coercion where picketing is entangled with or takes place in a violent setting. *Milk Wagon Drivers Union, Local 753 v. Meadowmoor Dairies, Inc.,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941) (peaceful picketing may properly be enjoined by a state where picketing is set against a background of violence or is a part of a pattern of violence).

Here, the trial court relied on § 8–3–108(2)(a), and it is unclear the extent to which it also relied on the state's police power in issuing the injunction. Further, while the union maintains that it engaged only in peaceful residential picketing, it is also unclear from the trial court's order whether it found that the picketing and other activities at the residences had included coercive and violent activity which properly could have been enjoined under the state's police power.

Therefore, the matter must be remanded for a clarification by the trial court of the extent to which it relied on the police power in issuing the injunction. To the extent that the court was relying on § 8–3–108(2)(a), for the reasons set forth above, its order cannot stand.

## V.

Because it will arise on remand, we also address the union's contention that an injunction cannot be issued against it in any event because the trial court did not find that the union had engaged in wrongful or improper conduct. On remand, the trial court should also clarify this aspect of its order.

■ In federal actions under the Norris-LaGuardia Act, 29 U.S.C. § 106 (1998), unions and labor organizations cannot be held liable for members' acts unless it is shown that the organization actually participated, gave prior authorization, or ratified such acts after actual knowledge of their perpetration. *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947).

A division of this court has held that the authorization or ratification standard was applicable to state law cases involving union members and union liability, and also concluded that clear proof, rather than preponderance of the evidence was required. Although the Colorado Supreme Court later reversed on the grounds that the division had applied the wrong burden of proof, it did not disturb the requirement of union authorization or ratification. *See International Broth-*

*erhood of Electrical Workers, Local Union 1269 v. Vikman,* 854 P.2d 1302 (Colo.App. 1992), *rev'd,* 889 P.2d 646 (Colo.1995).

Under general principles of agency, the union's liability for the acts of its members turns on whether the union instigated, supported, ratified, or encouraged the acts of its members. *Consolidation Coal Co. v. United Mine Workers, Local 1261,* 725 F.2d 1258 (10th Cir.1984). Union liability can also be proven by evidence demonstrating either that the union approved the violence which occurred, or that it participated actively or by "knowing tolerance" of further acts which were in themselves actionable under state law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The union's knowing tolerance of its members' wrongful conduct is sufficient to establish liability, provided that the knowing tolerance amounts to support for the activity or ratification of it under the law of agency. *Fry v. Airline Pilots Ass'n,* 1994 WL 761045 (D.Colo.1994), *aff'd in part, vacated in part on other grounds,* 88 F.3d 831 (10th Cir. 1996).

Here, CF&I raised the knowing tolerance argument in its response brief to the union's motion to stay the injunction. The trial court denied the motion to stay the injunction and adopted CF&I's reasoning contained in the brief.

However, the court did not specifically find that the union had ratified or authorized the improper conduct either under common law agency principles, or by its knowing tolerance of the conduct. Thus, to the extent that the trial court's injunction was based on the police power, rather than on the infirm state statute, and arose from the conduct of the union members, the court should determine whether the union ratified or authorized the improper conduct.

## VI.

In summary, the injunction is affirmed insofar as it enjoins union members from en-

gaging in the acts of violence, force, threats, intimidation and harassment set forth by the court, and is reversed insofar as it enjoins the union or union members from peaceful residential picketing based on § 8–3–108(2)(a), C.R.S.1998. The cause is remanded for findings as to whether the union authorized or ratified the improper actions of the union members that the court properly did enjoin, and for further proceedings and clarification consistent with the views expressed in this opinion.

Judge NEY and Judge RULAND concur.