### No. 17,725.

### UNITED MINE WORKERS OF AMERICA, ET AL. *v.* GOLDEN CYCLE CORPORATION.
(300 P. [2d] 799)

Decided August 20, 1956.  Rehearing denied September 10, 1956.

Messrs. GRAHAM & SCHEUNEMANN, for plaintiffs in error.

Mr. THOMAS M. BURGESS, Mr. KENNETH W. GEDDES, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

WE will refer to the parties as they appeared in the trial court, where defendant in error was plaintiff and plaintiffs in error were defendants.

Plaintiff, operator of a coal mine in El Paso County, Colorado, filed its complaint in the district court alleging that no labor dispute existed at its coal mine; that sixteen of its employees had entered into a conspiracy with the United Mine Workers of America, hereinafter referred to as the Union, to violate certain sections of the Colorado Labor Peace Act. The complaint further alleged that the Union and the individual defendants had coerced and intimidated the other employees of the plaintiff and their families; had picketed their homes; destroyed property; injured persons, interfered with ingress and egress to plaintiff's property; completely blocked roads and highways adjacent to said mine and engaged in massed picketing of plaintiff's property in an attempt to stop production at the mine and to prevent other employees from working. It was alleged that as a

result of the acts complained of the mine was forced to suspend operations. A temporary restraining order was issued, ex parte. Later the defendants filed an answer to the complaint in which the alleged illegal acts were denied; that a labor dispute existed and that the trial court lacked jurisdiction to hear and determine the matters involved because the asserted labor dispute involved and affected interstate commerce within the meaning of the Labor Management Relations Act. 61 Stat. 140, 29 U.S.C. 141, et seq.

Findings of facts and conclusions of law were entered by the trial judge in May, 1955, and a Preliminary Injunction was issued. The decree for a preliminary injunction, from which the defendants have sued out a writ of error, contained several restraints which not only enjoined any further violations of the Colorado Labor Peace Act but which further ordered and commanded defendants to "refrain and desist from in any manner hindering or preventing the employees of the Plaintiff at the Pike View Mine from working at said mine by picketing, threats, intimidations, force or coercion of any kind, and to refrain and desist from in any manner engaging in an effort to interfere with production at the Pike View Coal Mine" and "Refrain and desist from in any manner hindering or preventing the normal operation of the Coal Mine and coal business of the Plaintiff."

It is contended by counsel for defendants that the conduct involved is entirely governed by the federal acts and subject to the exclusive jurisdiction of the National Labor Relations Board and that the trial court has only limited jurisdiction "where the Employer is subject to the Federal Labor Management Relations Act." It is also contended that the terms of the injunction are beyond the jurisdiction of the trial court, and are not supported by evidence.

Briefly, from the findings of the trial court, amply supported by competent evidence, the following facts appear: That no labor dispute existed under the Colorado

Labor Peace Act. On March 17, 1955, approximately one hundred members of the Union, including sixteen employees of plaintiff who had worked on March 16, 1955, the remainder of said one hundred members being individuals belonging to the Union but not employees of plaintiff, "gathered on the highways leading to and around the Mine and picketed the same and prevented other workmen from going to the Mine." That the mine did not operate from March 17th thru March 20, 1955, but reopened on March 21st with deputy sheriffs from El Paso county present to maintain order. That from March 18 to April 15, 1955, "for the declared purpose of preventing the Mine from operating until such time as the standard United Mine Workers of America contract might be executed," approximately fifty pickets including employees of plaintiff and others not so employed at the mine, returned to the property and stationed themselves along the highways and near the buildings at the mine before the workmen arrived and "waved them down and attempted to prevent them from going to work," but the mine continued to operate with about twenty-five men working therein. That about April 15, 1955, a bus load of fifty members of the Union came to the mine from Trinidad, Colorado, and these individuals joined the "usual group of pickets, making some one hundred in all present on that morning." The court found that these one hundred men stationed themselves along the highways, waved down men intending to work in the mine and effectively prevented all but one car and one employee from going through to the mine on that morning. Thereafter, and on the same day, these men went "near the Mine building and stationed themselves there and remained until the officials at the Mine ordered the Mine closed for the day and the Mine remained closed from April 15th to April 17th and reopened on April 18th after the Temporary Restraining Order herein has been entered." The trial court further found from the evidence that during the period of the

picketing there were threats of personal violence against at least four employees of the Mine, a threat of damage to the car of one employee, two tires on the car of an employee were cut, roofing nails were scattered by unknown persons on several occasions on the roads leading to the mine and around the houses and driveways of two employees who live in Colorado Springs, a Mine official struck a Union official, one employee was slapped, three employees were followed in their car by three cars of Union representatives and when they were stopped, the Union representatives suggested that they not return to work and there is conflicting evidence as to the abusive and profane language used by the pickets and directed at the employees on each day of the picketing. That the defendants engaged in mass picketing in that at all times there were nearly twice as many pickets in and around the property as there were employees. That the large number of pickets with their cars each day did of itself tend to obstruct and interfere with entrance to and egress from the place of employment and interfered with the free and uninterrupted use of the public roads, streets and highways in and around the mine. That the large number of pickets "created an atmosphere of imminent danger of breach of the peace and violence, which could well result in personal injury and destruction of property * * *." There is evidence in the record that these pickets trespassed on the plaintiff's property and that the Sheriff was unable to handle them. The record is replete with testimony regarding the threats made to employees who desired to work in the mine and that some physical violence was indulged. Union officials testified that the purpose of the picketing was to obtain a Standard Union Contract, and that no attempt was made by the Union to have plaintiff negotiate for a contract but they demanded a National Bituminous Coal agreement which required that all employees of plaintiff be members of the defendant Union. Plaintiff is engaged in interstate commerce.

The language employed by Judge Elder in *Lilly Dache, Inc., v. Rose,* 28 N.Y.S. 2d 303, is appropriate. He said: "There is nothing mysterious in the term 'peaceable picketing.' To picket is to post a watcher to observe; as applied to a labor dispute it means the stationing of one or more persons to observe and attempt to persuade; peaceable picketing means simply, tranquil conduct, conduct devoid of noise or tumult, the absence of a quarrelsome demeanor, a course of conduct that does not violate or disturb the public peace; this is but a common-sense definition. As a necessary corollary boisterous conduct, the use of vile language, bellicose demeanor, threats, violence, coercion, intimidation, shouting and interference with the use of the premises or impeding the public highway, as by mass picketing, which is the use of a large number of pickets, is not peaceable picketing, but is illegal picketing."

■ Picketing may be lawful or unlawful depending upon the purpose of the picketing and the manner in which it is conducted.

There is ample evidence in the record that the conduct of the pickets here would tend to generate trouble. As we interpret *Weber v. Anheuser-Busch, Inc.* 348 U.S. 468, and *United Construction Workers v. Laburnum Const. Corp.,* 347 U.S. 656, the U. S. Supreme Court held that state courts do have jurisdiction to enjoin threats of personal injury and property damage to employees and management.

■ In *Allen-Bradley Local [No. 1111, United Electrical Radio & Machine Workers of America] v. Wisconsin Employment Relations Board,* 315 U.S. 740, the State was allowed to enjoin mass picketing, threats of bodily injury and property damage to employees, obstruction of streets and public roads, the blocking of entrance to and egress from a factory, and the picketing of the homes of employees. It was there held that such conduct was not subject to the federal board, either by prohibition or protection.

We quote from *United Automobile, Aircraft and Agricultural Implement Workers v. Wisconsin Employment Relations Board and Kohler Co.*, decided by the United States Supreme Court on June 4, 1956: "With the passage of the Taft-Hartley Act in 1947, the Congress recognized that labor unions also might commit unfair labor practices to the detriment of employees, and prohibited, among other practices, coercion of employees who wish to refrain from striking. * * * Appellant urges that this amendment eliminated the State's power to control the activities now under consideration through state labor statutes.

"It seems obvious that §8 (b) (1) was not to be the exclusive method of controlling violence even against employees, much less violence interfering with others approaching an area where a strike was in progress. (Citing *United Construction Workers v. Laburnum Construction Corp.*, supra.) No one suggests that such violence is beyond state criminal power. The act does not have such regulatory pervasiveness. The state interest in law and order precludes such interpretation. * * *

█ "There is no reason to re-examine the opinions in which this Court has dealt with problems involving federal-state jurisdiction over industrial controversies. They have been adequately summarized in *Weber v. Anheuser-Busch, Inc.*, 348 U.S. 468, 474-477. As a general matter we have held that a state may not, in the furtherance of its public policy, enjoin conduct 'which has been made an 'unfair labor practice' under the federal statutes.' * * * But our post·Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence. The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the

violence. * * * The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect.

"We hold that Wisconsin may enjoin the violent union conduct here involved."

▮ We hold that the trial court had jurisdiction to enjoin mass picketing, threats of bodily injury and damage to property of employees and plaintiff company, the obstruction of entrance to and egress from plaintiff's mine property and the picketing of employees' homes, together with coercion, harassment, and threats to employees who desire to work. Such tortious conduct on the part of defendants is supported by competent evidence and the findings of the trial court. See *Youngdahl v. Rainfair, Inc.* (Ark.), 288 S.W. 2d 589; *Tallman Co. v. Latal* (Mo.), 284 S.W. 2d 547.

Accordingly, the cause is remanded to the trial court with direction to modify the preliminary injunction as follows: To restrain and enjoin defendants from mass picketing of plaintiff's property and of the roads and streets leading thereto; from acts of violence or threats of violence; destruction or damage to the property of plaintiff, or that of such of its employees as desire to work and the intimidation or coercion by acts or threats of violence to such employees. The trial court shall also designate a reasonable number of pickets to be allowed at the entrances to plaintiff's property.

Judgment ordered modified and cause remanded with direction.

MR. JUSTICE SPARKS specially concurring.

I concur in the conclusion announced, but I feel that an undue recitation of facts has obscured the legal arguments supporting the decision. I might add that when

viewed in the light of very recent federal decisions, this is the first time this Court has been called upon to resolve a conflict between the Colorado Labor Peace Act and the Federal Taft-Hartley Act.

This case concerns a "labor dispute" involving a Colorado employer engaged in interstate commerce. The trial court held that no labor dispute existed under C.R.S. '53, 80-5, denoted as the Labor Peace Act, and enjoined the union from any type of picketing, peaceful or otherwise.

The fundamental issue presented in this case is the constantly recurring clash between federal and state jurisdictions in matters involving interstate commerce. By virtue of its superior right to regulate such commerce the federal government is the authority in that field. By process of trial and error Congress has enacted successive laws dealing with labor management relations, the controlling one in this case being the Labor Management Relations Act of 1947, 61 Stat. 140, 29 U.S.C. 141, et seq., commonly known as the Taft-Hartley Act. This act applies to those industries involved in interstate commerce. Since through the process of imagination even the smallest business can be placed on an "interstate" level, we resignedly concede that more often than not states are sovereigns without subjects.

In the instant case the validity of the injunction when considered solely under the Colorado Labor Peace Act is not presented. The union contends simply that Congress has pre-empted the field in those cases where the parties are subject to the jurisdiction of the National Labor Relations Board as in the instant case. Since federal law is controlling here a review of pertinent federal cases decided since the passage of the Taft-Hartley Act convinces us that the contentions of the parties have already been answered. In *Garner v. Teamsters, etc.,* 346 U.S. 484, 98 L. Ed. 228, 74 S. Ct. 161, an employer engaged in interstate commerce sought an injunction against the union under the Pennsylvania Labor Relations Act. No labor

dispute or strike was in progress but picketing operations of the union caused a virtual cessation of the business. The picketing was orderly and peaceful. Applying state law the Pennsylvania trial court granted an injunction against the union. The injunction was dismissed by the Supreme Court of Pennsylvania and on certiorari the United States Supreme Court affirmed the dismissal as follows:

"The equity court held that respondents' conduct violated the Pennsylvania Labor Relations Act. The Supreme Court of the Commonwealth held, quite correctly, we think, that petitioners' grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices. It, therefore, inferred that state remedies were precluded."

The principle that state courts cannot enjoin peaceful picketing which is subject to federal jurisdiction, even though in violation of state law, is apparently firmly established. We observe, however, that the United States Supreme Court carefully pointed out that the Garner case was not one which involved "mass picketing, threatening of employees, obstructing streets and highways, or picketing homes." If such had been the facts, the court stated:

"We have held that the state may still exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.'" citing *Allen-Bradley Local v. Wisconsin Board,* 315 U.S. 740, 86 L. Ed. 1154, 62 S. Ct. 820.

The further federal case applicable here is the case *United Automobile Workers v. Wisconsin Employment Relations Board,* 351 U.S. 266, 100 L. Ed. Adv., 76 S. Ct. 794. Parties in that case were subject to federal jurisdiction, but nevertheless the courts of Wisconsin granted an injunction against the union pursuant to state law for alleged "mass picketing and violent conduct." In affirming the decision of the Wisconsin courts, the United States Supreme Court stated as follows:

"The States are the natural guardians of the public against violence. It is the local communities that suffer most from fear and loss occasioned by coercion and destruction. We would not interpret an act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect."

In the case before us we have concluded that the trial court had jurisdiction of the controversy by virtue of the "mass picketing" principle above set forth by the United States Supreme Court. Since, however, the union had a primary right to picket peacefully subject only to federal jurisdiction, we must further determine whether or not an abuse of that right destroyed the right entirely as was the effect of the trial court's injunction.

Historically this Court has upheld the right to peaceful picketing under the constitutional guaranty of free speech. Even more compelling has been a constant re-iteration of this right through the medium of the federal courts and national Congress. In the Wisconsin case, supra, we find no language to indicate that the court denied the right of peaceful picketing. The point is resolved in a reading of this case as it appears in the Wisconsin reports where it is affirmatively shown that only the unlawful picketing was enjoined, and that the court set forth the terms under which peaceful picketing could be carried on. *United Automobile Workers, et al. v. Wisconsin Employment Relations Board, et al.*, 269 Wis. 578, 70 N.W. (2d) 191.

It follows, therefore, that the trial court exceeded its jurisdiction in enjoining *all* picketing, including such peaceful picketing as might lawfully be carried on under the provisions of the Taft-Hartley Act, pursuant to such reasonable conditions as the court may impose.