CF&I STEEL, L.P., Petitioner/Cross–Respondent,

v.

UNITED STEEL WORKERS OF AMERICA; United Steel Workers of America Locals 2102 and 3287; Jack Golden; David Kins; Ernie Hernandez; Joey Padilla; Jeanne Landreth; Jim Harford; Sam Pierce; Tom Genetta; Richard Martinez And Henry Lefabre, Respondents/Cross–Petitioners.

No. 99SC587.

Supreme Court of Colorado, En Banc.

May 29, 2001.

Davis, Graham and Stubbs, L.L.P., Roger L. Freeman, Andrew M. Low, Denver, CO, Schwabe, Williamson & Wyatt, P.C., Thomas M. Triplett, Nathan A. Sykes, Portland, OR, Attorneys for Petitioner/Cross–Respondent.

Bredhoff & Kaiser, P.L.L.C., Jeremiah A. Collins, Leon Dayan, Washington, DC, Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Ellen M. Kelman, Dennis Valentine, Denver, CO, Attorneys for Respondents/Cross–Petitioners.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Lawrence W. Marguess, Denver, CO, Attorneys for Amicus Curiae Associated Builders and Contractors, Inc. and LPA, Inc.

Chief Justice MULLARKEY delivered the Opinion of the Court.

This case arises out of a labor dispute commencing on October 3, 1997, in which the United Steel Workers of America ("Union"), Locals 2102 and 3287, participated in a strike of the CF&I Steel plant in Pueblo, Colorado. In the course of the strike, several individual Union members engaged in improper conduct toward employees who crossed the picket line. Additionally, several Union members picketed the residence of a non-striking CF&I employee. The trial court enjoined the Union activity, including the residential picketing, and based its order on a provision of Colorado's Labor Peace Act that forbids residential picketing arising from labor disputes.

The court of appeals reversed the injunction in *CF&I Steel, L.P. v. United Steel Workers*, 990 P.2d 1124 (Colo.App.1999), finding that the relevant provision of the Labor Peace Act violated the First and Fourteenth Amendments to the United States Constitu-

tion. The court did find, however, that the trial court could have enjoined residential picketing if it were not peaceful based on the state's police power, and remanded the case to the trial court to clarify the extent to which it relied on this police power in issuing its injunction. The court of appeals also remanded the case for findings as to whether the Union authorized or ratified the improper conduct of its members.

We agree with the court of appeals' holding and conclude that the portion of the Labor Peace Act prohibiting labor picketing in residential areas is facially invalid under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. In addition, we agree that remand is required in order for the trial court to clarify its findings. Accordingly, the judgment of the court of appeals is affirmed.

## I.

In 1997, the Union authorized a strike against CF&I in the course of a labor dispute. During the strike, several Union members engaged in harassing, coercive, and intimidating conduct toward employees who had crossed the picket line. This included telephone calls, property damage, following vehicles, verbal threats, and interference with ingress to and egress from the CF&I plant. In addition, some members picketed the residences of non-striking employees.

CF&I applied for a temporary restraining order, which was granted by the trial court. One week later, the trial court granted CF&I's motion for a preliminary injunction. The Union denied responsibility for the misconduct in question, arguing that the perpetrators were neither officers nor agents of the Union and that the misconduct was not authorized by the Union and was contrary to Union instructions regarding proper strike conduct.

The trial court's order issuing the preliminary injunction found that the Union had not authorized, ratified, or condoned any of the improper acts; nevertheless, it enjoined the Union from "assaulting, threatening, or harassing any of [CF&I's] employees or their family members either in person or by way of telephone contact, and from picketing the domiciles of [CF&I's] employees." The Union filed a motion to stay the preliminary injunction, which was denied.

The court of appeals affirmed the injunction insofar as it properly enjoined any harassing or coercive conduct by Union members, but reversed the injunction to the extent that it enjoined Union members from peaceful residential picketing pursuant to section 8–3–108(2)(a), 3 C.R.S. (2000). *CF&I Steel,* 990 P.2d at 1131. The court of appeals also remanded the case to the trial court to make findings as to whether the Union authorized or ratified the improper acts of its members. *Id.*

We granted certiorari to consider the constitutionality of section 8–3–108(2)(a) of the Colorado Labor Peace Act.[1] We now hold that this provision of the Labor Peace Act prohibiting all labor picketing in residential areas, whether peaceful or not, is facially unconstitutional under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. In addition, we remand this case to the court of appeals to return it to the trial court for a clarification of its findings. Given our resolution of the constitutional question, we do not address the fourth issue on appeal, namely, whether peaceful residential labor picketing may be enjoined notwithstanding the preemptive effect of the National Labor Relations Act, 29

---

1. We granted certiorari on the following issues:

 (1) Whether the court of appeals erred in concluding that section 8–3–108(2)(a) of the Colorado Labor Peace Act is facially invalid because it violates the First Amendment and Equal Protection Clause of the United States Constitution.

 (2) Whether the court of appeals erred in remanding this case to the trial court for a determination as to whether the Union ratified or authorized the improper actions of its members.

 (3) Whether peaceful residential labor picketing may be enjoined notwithstanding the anti-injunction provision of the Colorado Labor Peace Act, C.R.S. section 8–3–118.

 (4) Whether peaceful residential labor picketing may be enjoined notwithstanding the preemptive effect of the National Labor Relations Act, 29 U.S.C. § 151 et seq.

U.S.C. §§ 151 to –169 (1988 & Supp. IV 1998).

## II.

At issue in this case is the constitutionality of section 8–3–108(2)(a), 3 C.R.S. (2000), which makes all residential picketing arising from labor disputes an unfair labor practice under the Colorado Labor Peace Act, sections 8–3–101 to –123, 3 C.R.S. (2000). This provision provides, in relevant part:

It is an unfair labor practice for an employee, individually or in concert with others, to ... [c]oerce or intimidate an employee in the enjoyment of his legal rights ... or to intimidate his family or any member thereof, *picket his domicile,* or injure the person or property of such employee or his family or of any member thereof....

§ 8–3–108(2)(a)(emphasis added). The question we address today is whether this provision violates the First Amendment and Equal Protection Clause by selectively prohibiting only labor picketing in residential areas.

## A.

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. In addition, the Constitution of the State of Colorado guarantees freedom of expression by providing that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject." Colo. Const. art. II, § 10. Although the Colorado Constitution provides broader protection of free speech than does the First Amendment to the United States Constitution, our analysis today will be based solely on the federal Constitution since this case falls squarely within its protections. *See Lewis v. Colo. Rockies Baseball Club,* 941 P.2d 266, 271–72 (Colo.1997).

■ First, we note that peaceful picketing is a form of constitutionally guaranteed free speech. *Pueblo Bldg. & Constr. Trades Council v Harper Constr. Co.,* 134 Colo. 469, 480, 307 P.2d 468, 474 (1957). Thus, picketing is expressive conduct protected by the First Amendment. *Police Dep't of the City of Chicago v. Mosley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)("[P]icketing plainly involves expressive conduct within the protection of the First Amendment ...."); *see also Carey v. Brown,* 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)("There can be no doubt that in prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, the ... statute regulates expressive conduct that falls within the First Amendment's preserve.").

■ To determine the appropriate standard of constitutional review to apply in this case we must begin by considering the character of the property affected by the regulation. *Lewis,* 941 P.2d at 272; *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Supreme Court has recognized three categories of public forum property: the traditional public forum, the designated public forum, and remaining public property. *Lewis,* 941 P.2d at 272; *see also Perry,* 460 U.S. at 45–6, 103 S.Ct. 948. Traditional public forum property includes public places, such as streets and sidewalks, which " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry,* 460 U.S. at 45, 103 S.Ct. 948 (quoting *Hague v. Comm. for Indus. Org.,* 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)).

Section 8–3–108(2)(a) of the Colorado Labor Peace Act expressly prohibits any labor picketing at an employee's residence.[2] This

---

**2.** We find the language "[i]t is an unfair labor practice for an employee ... to picket [an employee's] domicile" to be clear on its face. *See* § 8–3–108(2)(a), 3. C.R.S. (2000). This prohibition is unambiguous in its application to residential labor picketing, regardless of its peaceful-

ness. *See Town of Telluride v. Lot Thirty Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000)("When construing the meaning of a statute, reviewing courts should first consider the statutory language and give the words their plain and ordinary meaning.... [T]he court should not read a

prohibition compels us to undertake a federal constitutional analysis because the Supreme Court has established that public streets and sidewalks in residential neighborhoods qualify as public forum property. *See Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)(noting that "a public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood").

■■■ Regulations affecting expressive conduct in a traditional public forum are analyzed in terms of the nature of the restriction. *See Lewis,* 941 P.2d at 272. A content-neutral restriction is considered a reasonable time, place, and manner regulation if it is narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication. *Id.; see also United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Alternatively, regulations affecting public forum property that are content-based must serve a compelling state interest and be narrowly drawn to achieve that end. *Lewis,* 941 P.2d at 272; *see also Perry,* 460 U.S. at 45, 103 S.Ct. 948.

A regulation is content-neutral if it is "'justified without reference to the content of the regulated speech.'" *Lewis,* 941 P.2d at 275 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). However, a regulation that "describes impermissible picketing not in terms of time, place, and manner, but in terms of subject matter ... slip[s] from the neutrality of time, place, and circumstance into a concern about content." *Mosley,* 408 U.S. at 99, 92 S.Ct. 2286 (internal quotation marks omitted).

In *Mosley,* the Supreme Court invalidated an ordinance which permitted peaceful labor picketing near a school but prohibited all other picketing. In concluding that the ordinance made an impermissible distinction between labor picketing and other peaceful picketing, the Court stated:

The central problem with [the] ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful pick-

eting on the subject of a school's labor-management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign.

*Id.* at 95, 92 S.Ct. 2286. The Court cited with approval Justice Black's concurrence in *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), which explained that the government cannot "pick and choose among the views it is willing to have discussed on its streets ... [and thus] prescribe by law what matters of public interest people whom it allows to assemble on its streets may and may not discuss." *Id.* at 97–98, 92 S.Ct. 2286.

Similarly, *Carey* involved a statute that barred all picketing in residential areas but exempted the peaceful picketing of a place of employment involved in a labor dispute. *Carey,* 447 U.S. at 457, 100 S.Ct. 2286. The court found that the statute was content-based:

[It cannot be] seriously disputed that in exempting from its general prohibition only the "peaceful picketing of place of employment involved in a labor dispute," the Illinois statute discriminates between lawful and unlawful conduct based upon the content of the demonstrator's communication.

*Id.* at 460, 100 S.Ct. 2286.

■■ As in *Carey,* there is no doubt that the ban on residential picketing we are considering in this case applies only to labor disputes. The provision, of course, is part of the Labor Peace Act, which was enacted to declare "[t]he public policy of the state as to employment relations and collective bargaining." § 8–3–102(1), 3 C.R.S. (2000). The Act is intended to "establish standards of fair conduct in employment relations." § 8–3–102(1)(e), 3 C.R.S. (2000). It recognizes that the three major interests involved in any labor dispute are the employer, the employee and the public, and declares that the legislature intends to protect and promote each interest. § 8–3–102(1)(a), 3 C.R.S. (2000). The definition of "employee" is tied to labor disputes and unfair labor practices. § 8–3–

statute to create an exception that the plain lan-

guage does not suggest, warrant, or mandate.").

104(11), 3 C.R.S. (2000). The provision we are interpreting, section 8–3–108(2)(a), makes it an "unfair labor practice" for an employee to picket the domicile of another employee. The Act provides both a process to adjudicate alleged unfair labor practices as well as remedies for unfair labor practices. § 8–3–110, 3 C.R.S. (2000). Given the statutory language and the context, we conclude that the prohibition against residential picketing was intended to cover only picketing related to labor disputes. Thus, because section 8–3–108 of the Labor Peace Act discriminates between lawful and unlawful picketing based on the subject of the picket, it is not content-neutral on its face.

■ CF&I argues, however, that the effect of the statutory prohibition at issue is content-neutral, and premises its argument on the assertion that the common law of Colorado originally gave courts the power to regulate all residential picketing, whether peaceful or not, on the basis that it is inherently coercive. CF&I contends that the legislature, when enacting section 8–3–108, included a restriction on labor picketing because it was concerned about preemption. That is, if the Labor Peace Act at the time of its enactment were seen as "occupying the field" of labor-related disputes, inclusion of a specific restriction on residential labor picketing would be necessary to preserve the state's power to restrain all picketing by any party in a residential area. According to CF&I, then, the prohibition against labor picketing in the Labor Peace Act was nothing more than a legislative device to ensure that all residential picketing remain equally subject to restriction by the state. The soundness of CF&I's argument necessarily depends on the assumption that the courts in this state have a traditional, common-law authority to enjoin all forms of residential picketing.

We do not find this argument persuasive. First and most importantly, nothing in the text of the Labor Peace Act supports CF&I's theory. Second, CF&I has directed us to no legislative history that might reveal legislative intent to include labor picketing in a general ban on residential picketing. Third, there is simply no evidence that the Colorado

common law allows courts to enjoin all picketing in residential areas, including peaceful picketing, based on the theory that residential picketing is inherently coercive and disruptive. *Cf. Flores v. City & County of Denver*, 122 Colo. 71, 74–75, 220 P.2d 373, 374–75 (1950)(finding that residential picketing is not a per se breach of the peace). The petitioner's reliance on a theory that Colorado common law includes a general ban on residential picketing is, therefore, misplaced.

Likewise, our case law does not hold or even suggest that residential picketing is an inherently coercive activity. *Denver Milk Producers, Inc. v. International Brotherhood of Teamsters*, 116 Colo. 389, 183 P.2d 529 (1947), involved pickets posted at the site of milk processing plants as well as pickets that followed non-union drivers while on their routes hauling, processing and distributing milk in the Denver area. *Denver Milk Producers*, 116 Colo. at 391–93, 183 P.2d at 530–31. In discussing the law of picketing, this court quoted, with approval, the Washington Supreme Court:

> "The United States [S]upreme [C]ourt has, by [its] cases, established this rule: Peaceful picketing is an exercise of the right of free speech. Organized labor has the right to communicate its views either by word of mouth or by the use of placards. This is nothing more nor less than a method of persuasion. But when picketing ceases to be used for the purpose of persuasion— just the minute it steps over the line from persuasion to coercion—it loses the protection of the constitutional guaranty of free speech, and a person or persons injured by its acts may apply to a court of equity for relief."

*Id.* at 424, 183 P.2d at 545 (quoting *Swenson v. Seattle Cent. Labor Council*, 27 Wash.2d 193, 177 P.2d 873, 880 (1947)). Rather than finding that picketing is inherently coercive, the court in *Denver Milk Producers* made a clear distinction between peaceful picketing, which is protected by constitutional guaranty, and coercive picketing.

Finally, we find no evidence of a legislative determination that the type of picketing prohibited in this statute is inherently coercive. There is no indication that peaceful labor

picketing, as a class, is more disruptive than any other form of peaceful picketing in residential areas. *See Carey,* 447 U.S. at 462, 100 S.Ct. 2286.

 We emphasize that the General Assembly or a local government as appropriate has the power to prohibit all targeted picketing of an individual residence. *See Frisby,* 487 U.S. at 488, 108 S.Ct. 2495 (upholding a town ordinance that completely banned all picketing focused on, and taking place in front of, a particular individual's residence, finding that it was content-neutral, narrowly tailored to serve a significant government interest, and left open ample alternative channels of communication). In *Frisby,* the Court acknowledged the "devastating effect of targeted picketing on the quiet enjoyment of the home," and noted that the target is "figuratively, and perhaps literally, trapped within the home ... with no ready means of avoiding the unwanted speech." *Frisby,* 487 U.S. at 486–87, 108 S.Ct. 2495. Whether to enact this or any similar legislation is a matter of public policy for the relevant legislative body to decide. In the case now before us, no such decision has been made.

CF&I also contends that the Supreme Court's recent decision in *Hill v. Colorado,* 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), supports its argument that section 8–3–108(2)(a) is content-neutral. *Hill* upheld a Colorado statute, section 18–9–122(3), 6 C.R.S. (1999), that made it unlawful for any person, within 100 feet of a health care facility's entrance, to knowingly approach another person within eight feet without that person's consent, "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Hill,* 530 U.S. at 707, 120 S.Ct. at 2484. The Court examined the statute and noted that it placed "no restrictions on ... any subject matter that may be discussed by the speaker." *Id.* at 723, 120 S.Ct. at 2493 (commenting that the statute "applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries"). In concluding that the statute was content-neutral, the Court explained that "it simply establishes a minor place restriction on an extremely

broad category of communications with unwilling listeners." *Id.* The Supreme Court expressly distinguished the statute in *Hill* from the anti-picketing statute in *Carey,* finding that the latter statute was "constitutionally repugnant" because it "placed a prohibition on discussion of particular topics, while others were allowed." *Id.*

CF&I's reliance on *Hill* is misplaced. Like the anti-picketing statute in *Carey,* section 8–3–108 makes an impermissible distinction between lawful and unlawful conduct based on the subject of the picket. Unlike the statute in *Hill,* which applied equally to all speakers within a certain area, section 8–3–108 only places a prohibition on labor picketers. Thus, the statute at hand does not establish a "minor place restriction on an extremely broad category of communications," but impermissibly curtails speech on a narrowly drawn category of expression. As a result, section 8–3–108 is easily distinguishable from the statute in *Hill,* and is in fact analogous to the statute invalidated as content-based in *Carey.*

 Because section 8–3–108 is a content-based restriction affecting property in a traditional public forum, we must determine whether it is narrowly drawn to serve a compelling state interest. *See Lewis,* 941 P.2d at 272; *see also Perry,* 460 U.S. at 45, 103 S.Ct. 948. We conclude that it is not.

CF&I contends that the statute serves a compelling state interest in protecting residential privacy. We do not dispute that the state's interest in residential privacy is a legitimate one. *See Carey,* 447 U.S. at 471, 100 S.Ct. 2286 ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."). However, we need not address the issue of residential privacy since the statute here clearly fails the second part of the constitutional test; namely, it fails to be narrowly tailored to serve a governmental interest in protecting privacy in the home.

In *Mosley,* the court conceded that the city had a legitimate interest in preventing disruption in front of schools. *Mosley,* 408 U.S. at 100, 92 S.Ct. 2286. However, the court

invalidated the city's ordinance, which permitted labor picketing in front of schools but prohibited all other picketing, because it was not narrowly tailored to serve this interest:

> Although preventing school disruption is a city's legitimate concern, [the city] itself has determined that peaceful labor picketing during school hours is not an undue interference with school.... [The city] may not maintain that other picketing disrupts the school unless that picketing is clearly more disruptive than the picketing [the city] already permits. If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful.

*Id.* (citations omitted). Likewise, the Supreme Court in *Carey* struck down an ordinance that prohibited all residential picketing except for labor picketing. The Court rejected the appellant's argument that the statutory distinction was valid because the state had a legitimate interest in protecting residential privacy, explaining that:

> [T]he exclusion for labor picketing cannot be upheld as a means of protecting residential privacy for the simple reason that nothing in the content-based labor-nonlabor distinction has any bearing whatsoever on privacy. Appellant can point to nothing inherent in the nature of peaceful labor picketing that would make it any less disruptive of residential privacy than peaceful picketing on issues of broader social concern.

*Carey,* 447 U.S. at 465, 100 S.Ct. 2286.

Section 8-3-108 of the Colorado Labor Peace Act is the mirror image of the statutes in these cases. It places a complete ban on residential labor picketing, yet leaves all non-labor picketing in residential areas untouched. Specifically, the statute prohibits all labor picketing regardless of its peacefulness, but does not prohibit any non-labor picketing, whether it be peaceful or not. We apply the reasoning of the Supreme Court and reject the petitioner's contention that labor picketing, as a class, is more prone to be coercive or disruptive than all other forms of picketing. The regulation's categorical prohibition of picketing arising from labor disputes is not narrowly tailored to advance the state's interest in residential privacy, and therefore it violates the First Amendment.

B.

Because section 8-3-108 makes a distinction between speech-related activities in a public forum, it also implicates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that a statute affecting First Amendment interests be "finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey,* 447 U.S. at 461-62, 100 S.Ct. 2286; *see also Mosley,* 408 U.S. at 101, 92 S.Ct. 2286. Thus, the distinction made between labor and non-labor picketing in the Labor Peace Act must be tailored to serve legitimate state objectives.

■ Under *Mosley* and *Carey,* the statute again fails to withstand constitutional scrutiny. As discussed previously, the Court in *Mosley* invalidated an ordinance pursuant to the Equal Protection Clause because it made an impermissible distinction between labor and non-labor picketing. The Court concluded that the ordinance's total ban on all non-labor picketing was too broadly drawn and was not narrowly tailored to the city's interest in preventing disturbances of the peace. *Mosley,* 408 U.S. at 102, 92 S.Ct. 2286. Similarly, in *Carey,* the Court relied on the Equal Protection Clause to strike down a statute that prohibited all residential picketing except for labor picketing of a residence that was also used as a place of employment. The Court found the statute's differential treatment of labor and non-labor picketing "under the guise of preserving residential privacy" unconstitutional, since both forms of picketing are "equally likely to intrude on the tranquility of the home." *Carey,* 447 U.S. at 462, 100 S.Ct. 2286.

Likewise, in this case, any valid interest the state may have in preserving residential privacy and tranquility is not furthered by section 8-3-108's selective prohibition of labor picketing. The state may not justify its interest in maintaining residential privacy by allowing picketing on all but one disfavored subject. *See Mosley,* 408 U.S. at 101, 92

S.Ct. 2286. Thus, this provision of the Labor Peace Act may not stand under the Equal Protection Clause.

### C.

In sum, the trial court's order enjoining peaceful picketing outside the residence of a non-striking employee is invalid to the extent that it relies on section 8–3–108(2)(a) of the Colorado Labor Peace Act. We affirm the judgment of the court of appeals on this issue.

### III.

The parties in this case do not dispute that in the course of the lawful strike of the CF&I plant, several individual Union members engaged in improper conduct toward employees who crossed the picket lines. The issue we now address is whether this case should be returned to the trial court for a determination as to whether the Union ratified or authorized the improper actions of its members.

Under the Norris–LaGuardia Act, 29 U.S.C. § 106 (2000), unions and labor organizations cannot be held liable for the unlawful acts of their individual members absent "clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." *See also United Bhd. of Carpenters & Joiners v. United States,* 330 U.S. 395, 401–03, 67 S.Ct. 775, 91 L.Ed. 973 (1947); *Fry v. Airline Pilots Ass'n,* 88 F.3d 831, 841 (10th Cir.1996). In *Fry,* the court explained that union liability under this federal statute cannot be established merely by an inference drawn from the fact that several union members committed unlawful acts, or from the fact that the union failed to take affirmative steps to stop such illegal acts. *Fry,* 88 F.3d at 842. There must instead be evidence indicating a definite and substantial connection between the union and the illegal acts. *Id.*

Previously this court has held that the federal Norris–LaGuardia Act is not directly applicable to the state courts of Colorado. *Vikman v. Int'l Bhd. of Elec. Workers, Local Union 1269,* 889 P.2d 646, 659 (Colo.1995). In 1933, Colorado enacted a statute substantially similar to the Norris–LaGuardia Act which provided that no officer or organization could be held liable for the unlawful acts of individual union members without having authorized, ratified or participated in such acts. *See* 1935 Colo. Stat. Ann., ch. 97, sec. 79. This Act was repealed in 1943, however, with the enactment of the Colorado Labor Peace Act. *See* ch. 131, sec. 26, 1943 Colo. Sess. Laws 417–18.

In *Vikman,* the court reviewed the Labor Peace Act in determining the applicability of the Norris–LaGuardia Act to actions in state court. The court rejected the heightened standard of review codified in the Norris–LaGuardia Act, which requires a "clear proof" standard in cases involving the liability of labor unions for the tortious conduct of their individual members. *Vikman,* 889 P.2d at 659–60. The court instead found that the plain language and the legislative intent behind the Labor Peace Act revealed an intent to establish a preponderance of the evidence burden of proof on a party seeking relief against a labor union for improper acts. *Id.* at 661.

■ Although *Vikman* found that state courts are not bound to follow the "clear proof" standard required by the Norris–LaGuardia Act, it did not disturb the Act's basic proposition that determines the liability of a union based on whether it ratified or authorized the tortious acts of its members. Thus, in this case the Union can be held liable only if it can be proven by a preponderance of the evidence that it participated in, authorized, or ratified the tortious acts of its members.

Federal courts also rely on common-law agency principles in determining union responsibility for the acts of its individual members by considering whether the union instigated, supported, ratified or encouraged the acts in question. *See Consolidation Coal Co. v. United Mine Workers, Local 1261,* 725 F.2d 1258, 1263 (10th Cir.1984). Courts have found that liability based on union ratification of the acts of its members requires proof that the union either approved of the violent acts that occurred, or participated actively or in "knowing tolerance" of the acts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 739, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In this case the trial court issued a preliminary injunction prohibiting the Union from engaging in violent or intimidating conduct, stating:

> The Court does stress, however, that it is not in any way finding that the Unions authorized, ratified, or condoned any of the types of improper or illegal conduct. In fact, the Court specifically finds that the Unions have taken all reasonable steps to inform members of the proper striking behaviors and rules, and do not actually want to be associated with the type of behavior above described. The Court believes that these offensive acts were the actions of several misguided Union Members who have simply gone overboard in their zealous pursuit of their cause. However, the Unions must assume and accept responsibility for the acts of all their members. The community at large is unable to distinguish the difference and lumps all Union activity together.

After the trial court issued the injunction, and after a notice of appeal was filed, the Union moved to stay the injunction on the grounds that it had not authorized the improper conduct that the court had enjoined. The trial court denied the motion, and in its order, stated:

> This matter came on for hearing on [the Union's] Motion for a Stay of Preliminary Injunction Pending Appeal, and the Court having considered the motion and [CF&I's] response thereto ... [d]oes adopt as its findings [CF&I's] position as set forth in its Response, and therefore orders that [the Union's] Motion for Stay of Preliminary Injunction is hereby denied.

CF&I's motion in response had included an argument that the Union was responsible for the actions of its members because it had "knowingly tolerated" the improper conduct.

■ Although the trial court's order stated that it adopted CF&I's position in its response to the Union's motion to stay the injunction, the trial court never made any specific findings that the Union authorized, ratified, or "knowingly tolerated" the improper acts of its members. Therefore, this case must be returned to the trial court for a determination as to whether the Union au-

thorized or ratified the wrongful conduct of its members.

## IV.

We now address whether peaceful residential labor picketing may be enjoined notwithstanding the anti-injunction provision of the Colorado Labor Peace Act.

The anti-injunction provision provides, in relevant part:

> Except as otherwise provided in this article, no court has jurisdiction to issue in any case involving or growing out of a labor dispute any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person from doing, whether singly or in concert, any of the following acts:
>
> . . .
>
> (e) Giving publicity to and obtaining or communicating information regarding the existence of or the facts involved in any dispute, whether by advertising, speaking, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof . . . .

*See* § 8–3–118(1), 3 C.R.S. (2000). This provision therefore divests courts of jurisdiction to enjoin conduct, including picketing, that is without coercion or intimidation and does not involve a breach of the peace. *See People ex rel. Shaffer v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 175 Colo. 187, 189–90, 486 P.2d 10, 11–12 (1971)(finding that 8–3–118(1)(e) applies to peaceful picketing).

Section 8–3–110 grants jurisdiction to the Division of Labor and to the courts to review unfair labor practices under the Labor Peace Act. § 8–3–110(1), 3 C.R.S. (2000). Section 8–3–108 identifies what acts constitute unfair labor practices under the Act, and section 8–3–108(2)(a) in particular includes the picketing of an employee's residence as an unfair labor practice.

■ Thus, courts do have jurisdiction to enjoin the unfair labor practices defined in section 8–3–108 of the Act, but cannot enjoin conduct that is peaceful within the meaning of section 8–3–118(1)(e). However, the Act

does not limit the court's power to enjoin any conduct that may be within the scope of the state's police power. *See United Mine Workers v. Golden Cycle Corp.*, 134 Colo. 140, 146–47, 300 P.2d 799, 802–03 (1956)(recognizing the state's power to prevent mass picketing, violence, and overt threats of violence associated with labor picketing); *see also Allen–Bradley Local No. 1111, United Elec., Radio & Mach. Workers v. Wisconsin Employment Relations Bd.*, 315 U.S. 740, 749–51, 62 S.Ct. 820, 86 L.Ed. 1154 (1942)(upholding state's injunction of mass picketing, threats of bodily injury and property damage). Courts have found, in some circumstances, that states have the power to enjoin otherwise lawful conduct, including picketing, when it occurs in a violent setting. *Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 294–96, 61 S.Ct. 552, 85 L.Ed. 836 (1941)(upholding an injunction against peaceful picketing when the picketing was set in a background of violence).

In this case, the trial court issued a preliminary injunction without clarifying the basis for its order. Because we have concluded that section 8–3–108's prohibition of residential labor picketing is unconstitutional, the trial court's injunction is also invalid to the extent that it was based on that provision. Therefore, the trial court's order can be upheld only if it was legitimately based on the police power of the state. On remand the trial court must clarify whether the union-related misconduct in this case is enjoinable under the state police power, and if so, to what extent the injunction was based on that police power.

We conclude that this case must be returned to the trial court so that it may clarify its findings in its preliminary injunction order.

## V.

Because we have resolved the case on other grounds, we need not address the fourth issue on appeal concerning the Union's assertion that the National Labor Relations Act, 29 U.S.C. § 151 et seq., preempts a state court from enjoining peaceful residential labor picketing.

## VI.

In conclusion, we find that the provision of the Labor Peace Act prohibiting labor picketing in residential areas, section 8–3–108(2)(a), 3 C.R.S. (2000), is facially invalid under the First Amendment and the Equal Protection Clause of the United States Constitution. We affirm the judgment of the court of appeals.

Justice COATS concurs in part and dissents in part.

Justice COATS, concurring in part and dissenting in part:

While I have no objection to returning this case to the trial court for clarification of the grounds for its injunction, I disagree with several basic premises for the majority's constitutional holding. Because I believe that courts lack jurisdiction under the Colorado Labor Peace Act to enjoin residential labor picketing that is not coercive or intimidating and because I believe that such an injunction by a state court would, in any event, be preempted by operation of the National Labor Relations Act, I would reverse the court of appeals' determination that the domiciliary picketing provision of the Act is facially unconstitutional.

Initially, I consider it misleading to characterize the Labor Peace Act as granting concurrent jurisdiction to the courts to enjoin unfair labor practices. Although the Act makes clear that the failure to exhaust administrative remedies will not bar the pursuit of equitable or legal relief in the courts, § 8–3–110(1), 3 C.R.S. (2000), its designation of certain labor practices as unfair in no way broadens the power of courts to grant legal or equitable relief, nor does it eliminate the requirement of immediate and irreparable injury for injunctive relief. ·The Act regulates labor relations by designating certain labor practices unfair and providing administrative, and in some cases legal, remedies. Rather than expanding the powers of courts to enjoin labor practices, the Act, along with providing alternate remedies, actually restricts the jurisdiction of the courts to order

injunctive relief for conduct arising our of labor disputes. *See* § 8–3–118; *see also Denver Milk Producers v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers' Union,* 116 Colo. 389, 413, 183 P.2d 529, 540 (1947) (statute does not take away any rights from labor unions, but bestows upon them additional rights in "labor disputes").

Moreover, I do not believe that section 8–3–108(2)(a) should be construed to designate peaceful, noncoercive picketing of a fellow employee's domicile an unfair labor practice. In light of that section's controlling theme of protecting an employee and his family from coercion or intimidation in the context of labor relations, and in light of the specific prohibition of section 8–3–109 against treating as an unfair labor practice an employee's right to express, declare, and publish his views, including by peaceful picketing, *see Pueblo Bldg. & Constr. Trades Council v. Harper Constr. Co.,* 134 Colo. 469, 480, 307 P.2d 468, 474–75 (1957), the domiciliary "picketing" labeled unfair by the statute should be construed as coercive, nonpeaceful picketing. *See Denver Milk Producers,* 116 Colo. at 428–29, 183 P.2d at 547–48 ("[P]icketing as employed in the act must be held as intended in its coercive, and not in its persuasive, sense," to avoid invading right to freedom of speech contrary to an explicit provision of the statute) (Stone, J., concurring in part and dissenting in part); *see also People ex rel. Shaffer v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 175 Colo. 187, 189–90, 486 P.2d 10, 11 (1971) (finding "throughout the provisions of the Labor Peace Act an express recognition of the right of employees to engage in peaceful picketing"); *cf.* § 8–3–110(18)(a) (granting director authority to place restrictions on picketing where such picketing is found to lead to riots, disturbances, assaults, or injury to persons or property).

Except as otherwise provided in the Act, section 8–3–118 expressly removes jurisdiction from courts to enjoin certain conduct arising out of labor disputes, including publicizing or communicating information about a dispute by advertising or speaking without intimidation or coercion or by any other method not involving or threatening fraud, violence, or breach of the peace. § 8–3–118(1)(e). Both because I do not believe the Act provides for enjoining unfair labor practices by courts and because I do not believe in any event that the Act designates noncoercive picketing of an employee's domicile an unfair labor practice, I would hold that courts lack the jurisdiction to enjoin such peaceful, noncoercive picketing.

Apart from the provisions of the Labor Peace Act itself, I believe that any order enjoining peaceful picketing in a labor context implicating the National Labor Relations Act, 29 U.S.C. §§ 151 to 188 (1994) ("NLRA"), would be preempted. In general, the National Labor Relations Board is presumed to have exclusive jurisdiction over matters concerning activities arguably subject to protection under section 7, or prohibition under section 8, of the NLRA. *Int'l Longshoremen's Ass'n, Local 1416 v. Ariadne Shipping Co.,* 397 U.S. 195, 200, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Among other things, peaceful labor picketing falls within the purview of matters preempted by the NLRA and cannot be enjoined by a state court. *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 139, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957).

It is well accepted, however, that state courts retain concurrent jurisdiction with the National Labor Relations Board to enjoin picketing accompanied by coercive, violent, or threatening conduct. *Allen–Bradley Local No. 1111 v. Wis. Employment Relations Bd.,* 315 U.S. 740, 749–50, 62 S.Ct. 820, 86 L.Ed. 1154 (1942) (upholding order of Wisconsin Employment Relations Board pursuant to state Employment Peace Act designating as unfair labor practice the picketing of another employee's domicile); *United Mine Workers of Am. v. Golden Cycle Corp.,* 134 Colo. 140, 147, 300 P.2d 799, 803 (1956).

With regard particularly to the picketing of an employee's residence, the National Labor Relations Board in specific instances involving coercive, violent, or threatening actions, has declared such conduct unfair labor practices violating section 8(b)(1)(a) of the

NLRA, *see, e.g., Communications Workers of Am., Local 1118,* 305 N.L.R.B. 770, 1991 WL 258340 (1991); *United Mechanics' Union Local 150–F,* 151 N.L.R.B. 386, 1965 WL 15734 (1965), including the conduct at issue in this case, *United Steelworkers of Am.,* 2000 N.L.R.B. LEXIS 495 (Aug. 2, 2000). As such, residential picketing falls squarely within the "arguably prohibited or protected" standard announced in *Garmon,* and is presumably a matter within the jurisdiction of the National Labor Relations Board. To the extent that such picketing is coercive, violent, or threatening, and only to that extent, a state court can enjoin such conduct as an exercise of the state's police powers.

In my view, the provisions of the Labor Peace Act contemplate the limited jurisdiction afforded state courts as a result of federal preemption and do not purport to grant jurisdiction in excess of that yielded by the NLRA. Thus, I believe that state courts have jurisdiction to enjoin picketing only to the extent that such picketing is conducted in a violent, threatening, or coercive manner so as to implicate the equitable powers of the courts and not offend section 8–3–118(1)(e).

While I do not disagree with the majority's decision to remand for clarification of the bases for the trial court's preliminary injunction against domiciliary picketing, I note that the trial court made express findings of property damage, threats, and intimidation of family members of non-striking employees, which as the majority points out could justify the injunction of otherwise peaceful picketing. Maj. Op. at 1205 (citing *Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), as upholding an injunction against peaceful picketing when the picketing was set in a background of violence). To the extent that the trial court enjoined peaceful residential picketing solely as a labor practice designated unfair by section 8–3–108(2)(a), and not on the basis of findings of coercive, violent, or threatening conduct, I would hold that the trial court's action was expressly barred by the Act and preempted by federal law. I believe therefore that the court of appeals erred in holding that the statute unconstitutionally permitted such action, and I dissent from that portion of the majority opinion affirming that holding.